**SIGNED this 17th day of April, 2009.**

_____

**LEIF M. CLARK**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# United States Bankruptcy Court

**Western District of Texas**
**San Antonio Division**

| | |
|---|---|
| IN RE | BANKR. CASE NO. |
| SHANE E. EASTMAN | 05-57404 |
| *DEBTOR* | CHAPTER 7 |
| SHANE E. EASTMAN | |
| *PLAINTIFF* | |
| V. | ADV. NO. 08-05055 |
| BAKER RECOVERY SERVICES AND LAW OFFICES OF JUANA TREJO, | |
| *DEFENDANTS* | |

### MEMORANDUM DECISION ON DEFENDANT'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 7012(b)(1) AND 7012(b)(6)

This is an adversary proceeding by Shane E. Eastman, who re-opened his bankruptcy case in order to enforce the discharge injunction against Baker Recovery Services ("Baker") and the Law Offices of Juana Trejo (the "Trejo Offices"). The complaint also asserted a claim under the Fair Debt Collection Practices Act, and also sought damages for the defendants' alleged violation of the

discharge injunction. The Defendants filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The court ruled that the motion would be treated as a summary judgment, as factual materials were attached to the motion. After a series of resettings, the motion was ultimately heard by the Court on October 15, 2008. In advance of the hearing, both parties submitted evidence in the form of affidavits and exhibits. The defendants objected to one of the exhibits submitted by the plaintiff, pursuant to Federal Rule of Evidence 408.[1] The plaintiff filed a response to the evidentiary objection. This memorandum decision disposes of these matters, overruling the evidence objection, granting the motion to dismiss the FDCPA and state law causes of action for lack of jurisdiction, and denying the motion to dismiss the action on the discharge.

### Background Facts

The following facts are uncontested. The plaintiff filed a voluntary chapter 7 bankruptcy on October 13, 2007 (the "Petition Date"). The case was a 'no asset' case, as indicated by the trustee at the conclusion of the First Meeting of Creditors, and as noted on the docket. Baker was a pre-petition unsecured creditor.[2] However, the plaintiff had failed to list Baker's debt (the "Baker Debt") on his bankruptcy schedules. On January 26, 2006, the Plaintiff received his discharge. The next day, the case was closed. On February 28, 2006, Baker, who was represented by the Trejo Law Offices, initiated a lawsuit (the "California Action") in California state court to recover the Baker Debt. The Plaintiff never appeared in the California Action and, on June 1, 2006, Baker obtained a default judgment against the Plaintiff in the amount of $11,679. Prior to the actual entry of the judgment, however, on or about May 2, 2006, the Plaintiff's bankruptcy counsel had contacted

---

[1] The basis of the evidentiary objection was Federal Rule of Civil Procedure 408. However, the evidentiary objection was treated as though it had been filed pursuant to Federal Rule of Evidence 408. Indeed, at the hearing, the parties argued the evidentiary objection according to Federal Rule of Evidence 408.

[2] Baker purchased, pre-petition, a debt incurred by the Plaintiff on a Direct Merchants Credit Card Account.

Baker informing him of the Plaintiff's discharge. Baker allowed the judgment to be entered anyway.

Over a year and a half after the Judgment was entered, on March 7, 2008, the judgment was vacated – upon Baker's request[3] – by the California court. However, on January 28, 2008 (before the judgment was vacated), the plaintiff had already moved to reopen his bankruptcy case. On February 25, 2008, the case was reopened. On May 6, 2008 (after the state court action in California had been dismissed) the plaintiff initiated this adversary proceeding, seeking a declaratory judgment that the plaintiff's discharge barred Baker's actions in California as a matter of law, with or without notice, and that Baker and his agent, the Trejo Law Office, improperly initiated and continued to prosecute the California Action to recover the Baker Debt, even though the debt had been discharged in the plaintiff's bankruptcy: The complaint alleges that the defendants (I) violated 11 U.S.C. § 524(a); (II) violated the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692, *et seq.*; (III) violated Title 5, Chapter 392 of the Texas Finance Code (the "TDCA"); (IV) as a result of the TDCA violation, the Defendants also violated Title 2, Chapter 17, Subchapter E, of the Texas Business & Commerce Code (the "Consumer Protection Act"); and (V) tortiously engaged in practices that rise to the intentional infliction of emotional distress.

### Arguments of the Parties

The defendants argue that the FDCPA and TDCA causes of action are not within the subject matter jurisdiction of the federal court, and so must be dismissed for lack of subject matter jurisdiction. *See* FED.R.CIV.P 12(b)(1), FED.R.BANKR.P 7012. The defendants further urge that summary judgment should be granted on all claims[4] because the causes of action in the complaint

---

[3] Baker alleges that he made his request to vacate the default judgment in August 2007. However, as discussed below, there is no support for that statement in the record. Nor is that factual allegation unrebutted by the Plaintiff.

[4] Presumably, this request is in the alternative as to the FDCPA and the TDCA claims. In other words, if the Court finds it has jurisdiction over the FDCPA and the TDCA claims, the defendants ask that the Court dismiss the FDCPA and the TDCA claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

fail to allege any claim upon which relief may be granted. In support, the defendants argue that the plaintiff failed to list the Baker Debt in his bankruptcy. Thus, the Baker Debt was not discharged. They add that the plaintiff's bankruptcy was a no-asset case, so that there was never a deadline to file a claim, further supporting the contention that the claim cannot have been discharged. In all events, there can be no right to recovery in this court for a violation of the discharge injunction if the defendants have already vacated the judgment (as took place on March 7, 2008). The plaintiff disagrees, of course, on all counts.

**Analysis**

**A. The FDCPA and 11 U.S.C. § 524(a)**

The defendants claim that the FDCPA cause of action cannot be brought in federal court under the bankruptcy jurisdiction statute. Even if there were jurisdiction, they claim that a debtor must choose between an action under the FDCPA and an action under section 524(a) of the Bankruptcy Code – the debtor cannot have both remedies, say the defendants. For the reasons articulated below, the court holds that claims alleging violations of the FDCPA and 11 U.S.C. § 524(a) can in fact co-exist, even when they are based upon the same set of facts. However, the court also holds that it does not have subject matter jurisdiction to entertain the FDCPA cause of action asserted, at least in this case.

Regarding the first of these two issues, there is a split in the circuits. The Ninth Circuit in *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002) found that the two causes of action cannot co-exist. The Seventh Circuit, in *Randolph v. IMBS, Inc.,* 368. F.3d 726 (7th Cir. 2004), ruled to the contrary, finding that violation of the discharge injunction could form a basis for recovery under the FDCPA. The *Randolph* approach is the more persuasive, in this court's view. There, the Seventh Circuit explained that the line of authority that suggested the two causes of action are

incompatible were built on a false premise – to wit, that the Bankruptcy Code "pre-empted" the FDCPA. The court noted (somewhat dryly) that both statues are federal, so a pre-emption analysis could not be applicable. *Randolph*, 368 F.3d at 730. Said Judge Easterbrook, writing for the court, "when two federal statutes address the same subject in different ways, the right question is whether one implicitly repeals the other – and repeal by implication is a rare bird indeed." *Id.* Implied repeal requires that there be either an irreconcilable conflict between the two enactments or a clearly expressed legislative intent that neither enactment functioned to repeal the other. *Id.* By way of example, the court examined the Supreme Court's application of the doctrine to the old and new civil rights statutes. Although the early civil rights statutes, "enacted in 1866 and 1871, and now codified in 42 U.S.C. §§ 1981 to 1985, differ in details both large and small from more recent statutes, such as the Civil Rights Act of 1964...," *id.* at 732, the Supreme Court held that both the old and the new civil rights acts were easily enforceable without creating conflicting duties or obligations, and that thus the standards for implied repeal were not met. *Id.* Similarly, the FDCPA and the Bankruptcy Code are also compatible because "it is easy to enforce both statutes, and any debt collector can comply with both simultaneously..." *Id.* Thus, neither is repealed by implication and courts may enforce both. *Id.* at 731. The *Randolph* decision decides this case as well. The same set of facts may give rise to a cause of action for violation of both the FDCPA and section 524(a) of the Bankruptcy Code, and a debtor may successfully enforce both statutes on the same set of facts. Preemption analysis is inapposite, and the elements for finding an implied repeal are not. The motion to dismiss on this ground is denied.

The issue of whether there is bankruptcy subject matter jurisdiction to hear the FDCPA claim is a different question altogether. Section 1334 of title 28 defines the ambit of the federal courts' bankruptcy jurisdiction, which applies to "all civil proceedings arising under title 11, or arising in

or related to cases under title 11." 28 U.S.C. § 1334(b); *see U.S. Brass Corp. v. Travelers, Ins. Group (In re U.S. Brass Corp.)*, 301 F.3d 296, 303-304 (5th Cir. 2002); *compare In re Exide Technologies*, 544 F.3d 196, 205 (3d Cir. 2008). Of the three categories, the one relevant to this inquiry is the one denominated "related to." In the Fifth Circuit, "a proceeding is 'related to' a bankruptcy if 'the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy.'" *In re U.S. Brass*, 301 F.3d at 304.

The defendants do not seriously contest whether the court has subject matter jurisdiction to consider the plaintiff's claim under section 524(a). That is a matter that, on its faces, "arises under a provision of title 11," and so is clearly within the federal court's bankruptcy subject matter jurisdiction. The FDCPA claim, on the other hand, does not (of course) arise under title 11. Nor did the claim "arise in" the case – the facts that engendered the cause of action arose post-discharge, and after this case was closed. If bankruptcy subject matter is to be found at all, it will only be because the matter is "related to" the case. *See* 28 U.S.C. § 1334(b).

The FDCPA claim is certainly a matter that is, as a matter of plain English, "related to" *a* bankruptcy case. It arises from the same set of facts that give rise to the violation of discharge cause of action. And the actual language of the statute does not limit its reach to *open* bankruptcy cases (else it would say *the* bankruptcy case). Nor does the statutory language contain any language limiting its reach to *estates* under active administration. By the plain language of the statute, so long as a matter is "related" – whatever that term connotes – to "a bankruptcy case," it falls within the federal courts' bankruptcy subject matter jurisdiction.

We do not write on a clean slate, however. While a plain meaning reading of the statute itself (which is substantially unchanged from its original 1978 formulation) should yield a broad rule, the case law has substantially narrowed the reach of "related to" jurisdiction. *See Pacor Inc. v. Higgins*,

743 F.2d 984, 994 (3rd Cir 1984) (matters "related to" the bankruptcy case are those whose outcome could have any conceivable effect on the estate being administered); *Matter of Wood*, 924 F.2d 90, 97 (5th Cir. 1987) (applying *Pacor* in the Fifth Circuit). First, the case law has focused on *the* case, as opposed to *a* case. *See Pacor*, *supra*. That is, the matter must be related to a pending case. Second, the case law substitutes for "case" the word "estate," then imports the case law that has developed around the point when the "estate" ceases to exist. *See, e.g., In re Craig's Stores, Inc.*, 266 F.3d 388 (5th Cir. 2001). Finally, the case law requires that the matter, in order to qualify as one that is "related to," must be one that determination of which would conceivably have an impact on the *administration* of the estate. *See Wood, supra.* Thus, as currently interpreted by the courts, "related to" jurisdiction is substantially narrower than the statute's language would suggest.

However, the circuit courts have also recognized a jurisprudentially based *expansion* of jurisdiction beyond the foregoing judge-made limitations. In *Matter of Morrison*, 555 F.3d 473 (5th Cir. 2009), the Fifth Circuit struggled with a similar conundrum, one arising in the context of a *creditor's* action to obtain both a determination of nondischargeability as to a particular claim, and a judgment on the claim as well. Recognizing that a literal reading of the predominant theory of bankruptcy court jurisdiction might counsel otherwise, the court of appeals noted that jurisdiction should nonetheless be found to exist, despite that tension, for pragmatic reasons. Said the court,

> ... It is not unreasonable to conclude that Congress, which intended bankruptcy courts to exercise far more expansive jurisdiction under the Code than under previous law, could not have intended to cut back on their ability to enter money judgments in the core proceedings encompassed by non-dischargeableability complaints.

> The pragmatic reasoning adopted by most circuit courts is hard to contradict. Logically, the litigation necessary to prove nondischargeability also proves the basis for and amount of the debt. There would be no judicial efficiency in requiring the beneficiary of a nondischargeability judgment to pursue a separate lawsuit in state or federal court in order to secure a money judgment against the debtor. Moreover, entry of judgment for the debt is proper because the court actually determined 'the

existence and validity of the debt" in a core proceeding.

*Id.*, at 479.

A similar rationale warrants a similar exercise of jurisdiction here. The action for violation of the discharge injunction is a core proceeding, one that arises under a provision of title 11. *See* 11 U.S.C. § 1334(c)(2); 157(b)(2); *see also In re Nat'l Gypsum Co.,* 118 F.3d 1056, 1064 (5th Cir. 1997) (action to enforce discharge injunction is a core proceeding). The selfsame facts make out a case for violation of the FDCPA. There would be no judicial efficiency in requiring the beneficiary of a judgment finding the defendant liable for violating the discharge injunction to pursue a separate lawsuit in state or federal court in order to secure a money judgment against the defendant. *Morrison*, at 479. Thus, the court concludes, under the reasoning of *Morrison*, that it has the requisite subject matter jurisdiction to entertain the FDCPA cause of action.[5]

## B. Texas Statutory and Tort Claims

The Court's analysis with regard to its exercise of subject matter jurisdiction over the plaintiff's FDCPA claim applies as well to the plaintiff's Texas statutory and tort claims. Therefore, the court has jurisdiction over the Plaintiff's Texas statutory and tort law claims for the same reasons the Court has subject matter jurisdiction over the FDCPA claims.

## C. Federal Rule of Evidence 408

The court earlier noted that the facts were not in substantial dispute. To the extent those facts have been laid out in this opinion so far, that is true. However, there is a piece of evidence the admission of which is contested by the defendants. The plaintiff offered a letter to support a further factual finding that the defendants violated the discharge injunction. The letter in question (the

---

[5] The court is well aware of its prior holding to the contrary in *Mahoney v. Wash. Mut., Inc. (In re Mahoney)*, 368 B.R. 579, 583 (Bankr. W.D. Tex. 2007). The court is also aware of its bench ruling to the contrary at the conclusion of the hearing on the motion. Both decisions were rendered before the decision in *Morrison*. It is equally important to note that the author of *Morrison*, Chief Judge Edith Jones, was also the author of *Craig's Stores*.

"Baker Letter") is dated January 8, 2008, and is from Jaimie Baker, owner of Baker Recovery Services,[6] one of the defendants herein, to plaintiff's counsel. The defendants object that the letter is inadmissible under Rule 408 of the Federal Rules of Evidence, as an offer of compromise. *See* Fed.R.Evid. 408(a).[7]

The court disagrees. *See Agan, et. al. v. Katzman & Korr, P.A., et.* al., 328 F.Supp.2d 1363 (S.D. Fla. 2004), *Wortman v. Donahoe (In re Donahoe)*, 180 B.R. 491, 495 (Bankr. N.D. Oh. 1995). The letter is not offered for purposes of using any admission made in the document to prove that the matter admitted is true. The letter is offered because the letter *itself* is alleged to *constitute*  a violation of the discharge injunction. Thus, the Baker Letter does not fall within the scope of Federal Rule of Evidence 408 because it is offered for purposes *other* than those prohibited by the rule. *Fed. R. Evid. 408(b)*, *In re Donahoe*, 180 B.R. at 494 ("*Rule 408* bars the admission of evidence only when the evidence is offered to show the following inference: that because a settlement offer was made, the offeror must be liable, because people don't offer to pay for things for which they are not liable."); *see also Savoy IBP 8, Ltd. V. Nucentrix Broadband Networks, Inc.*, 333 B.R. 114, 122 (N.D. Tex. 2005) (admitting statements made during settlement negotiations for the purpose of proving estoppel.); *Bankcard Am., Inc. v. Universal Bancard Sys.*, 203 F.3d 477, 483 (7th Cir. Ill. 2000) *cert. denied*, 531 U.S. 877, 148 L. Ed. 2d 128, 121 S. Ct. 186 (2000) (collecting cases that

---

[6] The letter is signed by Jaimie Baker as Owner of Baker Recovery Services.

[7] Here is what the Rule says:

Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through prior inconsistent statement or contradiction:
> (1) furnishing or offering or promising to furnish – or accepting or offering or promising to accept – a valuable consideration in compromising or attempting to compromise the claim; and
> (2) conduct or statements made in compromise negotiations regarding the claim, ...

Fed.R.Evid. 408(a).

admit settlement discussions because they are being offered for purposes other than to establish liability, including for purposes of rebuttal, impeachment, to show the defendant's knowledge and intent, to show a continuing course of reckless conduct, and to prove estoppel (citations omitted)).

The defendants' argument, if accepted, would mean that virtually *any* written threat by a creditor post-discharge would almost *never* come into evidence. After all, every demand that might otherwise violate the discharge injunction can be couched as an offer of compromise, or at least characterized as such: *If* you pay me some money, *then* I will no longer pursue my threatened action (whatever that action might be). Under the defendants' argument, a witness might even be prohibited from describing such a written communication at trial, on the same grounds. The argument is actually a solid demonstration for why this reading of Rule 408 must be rejected, just as it was rejected in *Donahoe. See In re Donahoe*, 180 B.R. at 495 (saying that the evidence at issue in that case was admissible because it was offered "as direct proof of the underlying substance of the disputed issue... not indirect proof that Plaintiff knows he must be liable because he made such an offer"); *see also Bituminous Construction, Inc. v. Rucker Enterprises, Inc., et. al.*, 816 F.2d 965, 969 (4th Cir. 1987) (upholding a district court's decision to admit settlement offers for the purpose "of showing Rucker's understanding of its obligations under the joint check agreement [the underlying contract at issue], and to establish that Bituminous [the plaintiff] had made demand upon Rucker for payment [the defendant].");  *see also United States v. Hauert*, 40 F.3d 197, 200 (7th Cir. 1984) (admitting, in a tax case, settlement documents in which the defendant waived prior arguments that certain monies were not taxable for the purpose of establishing that the defendant "knew 'what the law is' and his 'legal duty' thereunder.") *Agan, et. al.  v. Katzman & Korr, P.A. et. al.*, 328 F.Supp. 2d 1363,1371-1373 (S.D. Fla. 2004) (denying the defendants' motion to strike documents attached as exhibits to a complaint in a federal court claiming violations of the FDCPA and Florida's version

of the FDCPA offered to settle a related state court litigation saying that the "exhibits in question refer to a different and collateral matter and are not being introduced for liability/value purposes involving the underlying foreclosure claim, but, rather, as a basis for alleged FDCPA and FCCPA [Florida state law] violations." 328 F.Supp.2d at 1372.)[8] The letter in this case (and the communication in similar cases), *Agan*, 328 F.Supp. 2d at 1372, is not being used to prove up that the debtor owes the underlying debt. The focus is instead on the propriety of the collection action itself, a matter which, of course, was *not* the subject of a compromise in the Baker letter. *Id.* at 1371-1373. Rule 408 does not apply in this context to bar the admission of the letter.

The evidentiary objection is overruled.

## D. Summary Judgment Standards

Federal Rule of Civil Procedure 56(c), which is made applicable in adversary proceedings in bankruptcy cases pursuant to Federal Rule of Bankruptcy Procedure 7056(c), controls the standard for a motion for summary judgment.  Rule 56(c) provides that summary judgment shall be granted if pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In deciding a motion for summary judgment, courts must determine if there are any material factual issues to be tried, while at the same time, since the non-moving party would be precluded from a trial if the relief was granted, the Court should resolve ambiguities and draw reasonable inferences against the moving party. *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir. 1986).

---

[8] The Court recognizes that *Agan* is not entirely on all fours with the case at bar, as *Agan* was a ruling on a motion to strike pursuant to Fed. R. Civ. P. 12(f).  However, the Court believes that the *Agan* court's analysis of Fed. R. Evid. 408 is correct and thus adopts it here.

The burden traditionally rests on the moving party to establish the absence of a genuine issue as to any material fact. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247-48 (1986).  On the other hand, when the defendant moves for summary judgment and alleges an absence of evidence on a required element of any claim brought by the plaintiff, the burden shifts to the plaintiff to "make a showing sufficient to establish the evidence of [the] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. 317.  If the non-movant / plaintiff cannot establish a genuine issue of material fact regarding a required element of its claim, summary judgment is proper for the defendant because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The non-moving party may oppose a summary judgment motion by making a showing that there is a genuine issue as to material fact in support of a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  That is, "the mere existence of a scintilla of evidence in support of a [non-movant's] position will be insufficient.  There must be evidence on which a jury could reasonably find for the [non-moving party]." *Id.*  The non-moving party may not defeat a summary judgment motion by relying on self-serving or conclusory statements.  There must be something more than some metaphysical doubt as to a material fact.  That is, there needs to be evidence of a material fact at issue, although, of course, once that evidence is shown the Court moves on to the trial stage.  That is, the evidence need not be probative at the summary judgment stage. *See generally Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**E. Merits**

Section 524(a) operates as a permanent injunction, enjoining the "the commencement  or continuation of an action, the employment of process, or an act to collect, recover or offset any [] debt [discharged under section 727] as a personal liability of the debtor, whether or not discharge

of such debt is waived." 11 U.S.C. § 524(a)(2). Like all injunctions, it is self-effectuating, subject

to ordinary considerations of notice. Judgments obtained in violation of the discharge injunction are

void, and the discharge injunction, like any other injunction, can otherwise be enforced by contempt.

11 U.S.C. § 524(a)(1); *see Matter of National Gypsum Co.*, 118 F.3d 1056, 1063 (5th Cir. 1997)

(observing that the discharge injunction is a substantive right often enforced by a motion for

contempt but also enforceable through a declaratory judgment action). The discharge is not merely

an affirmative defense. It is an affirmative right that is granted by federal law. *Id.*[9]

The discharge applies to all debts, regardless whether they are listed or not. *See* 11 U.S.C.

§ 727(a); *see also Matter of Parker*, 313 F.3d 1267, 1268 (10th Cir. 2002). There is an exception to

discharge for certain unlisted debts, found in section 523(a)(3), but, like all exceptions to discharge

in that section, the burden is on the creditor claiming the exception to bring the action and prove its

entitlement. *See Matter of Fields*, 926 F.2d 501, 503 (5th Cir. 1991); *Matter of Benich*, 811 F.2d 943,

945 (5th Cir. 1987).

The defendants' argument here seems to be that the plaintiff had an affirmative duty to raise

---

[9] Said the Fifth Circuit:

> The District Court [below] rejected INA's argument that the true nature of ACMC's declaratory judgment action was a federal defense to a state law contract claim because "the scope and ramifications of the federal injunctions granted under section 524(a) of the Bankruptcy Code, the Plan, and the Confirmation Order are issues which are independent of the nature of INA's pre-confirmation claims." The District Court was correct. Although a discharge in bankruptcy can constitute an affirmative defense to a state law contract claim, ACMC's action to enforce the discharge injunction – and to construe the scope and effect of the confirmed plan – need not, *indeed cannot* resolve any state law contract issues ...

> The *Skelly Oil/Franchise Tax Board* line of decisions relied on by INA and this Court's *Fabrique* decision are not inconsistent with the Bankruptcy Court's finding of core bankruptcy jurisdiction. ... the section 524(a) discharge injunction is not solely a federal defense to potential state actions; instead, "[l]ike the the automatic stay of section 362(a), the discharge injunction is the equivalent of a court order." 4 *Collier on Bankruptcy* ¶ 524.02[2], at 524-14.

*National Gypsum*, 118 F.3d, at 1064.

the discharge as an *affirmative defense* in state court. That may be the law in state court, but it is not the law in federal court, for the straightforward reasons so cogently stated by the Fifth Circuit in *National Gypsum*. *See* note 9, *supra*. The discharge operates as a federal injunction, independently enforceable by the federal courts, regardless whether the debtor did or did not raise discharge as an affirmative defense in the state court proceeding. *Id.* What is more, any judgment rendered in violation of the discharge is, by the terms of the statute itself, *void*. *See* 11 U.S.C. § 524(a)(1). There is no exception or qualification in the federal statute regarding how the judgment might have come to have been rendered. *Any* judgment against the debtor determining the debtor to be personally liable on a claim discharged under section 727 is void, without qualification. The failure of the debtor to assert an affirmative defense under state law is simply not legally relevant to the federal question whether any such judgment is void.

Thus, the defendants were facially enjoined from filing or pursuing the California Action, regardless of whether the Baker Debt was listed in the plaintiff's bankruptcy schedules. The defendants rely on a decision of this court, *In re Musgraves*, 129 B.R. 119 (Bankr. W.D. Tex. 1991), for the proposition that, because the defendants did not have notice of the discharge and because the plaintiff failed to comply with his duty to appear in the California Action to defend his discharge injunction, the defendants' pursuit of the judgment was not a violation of § 524(a) of the Bankruptcy Code. Apart from the fact that it is later Fifth Circuit law that is controlling, the defendants have seriously misread *Musgraves*. This court there stated that a party *may* litigate dischargeability under section 523(a)(3). *Id.*, at 121. The defendants convert "may" to "must," here contending in essence that the federal bankruptcy discharge offers debtors only an affirmative defense that *must* be urged in state court, implying that, if it is not, then the debtor's discharge is *waived*.

The defendants' contention is not only an extraordinary leap from the holding and reasoning

set out in *Musgraves*. It is also an extraordinary leap from the plain language of the federal statute, which states that the discharge operates as an injunction "whether or not discharge of such debt is waived." *See* 11 U.S.C. § 524(a)(2); *see also In re Egleston*, 448 F.3d 803, 812-13 (5th Cir. 2006).

It is true that section 523(a)(3) affords creditors an exception to discharge when the claim has not been listed in the debtor's schedules. It is also true that, if a debt is not discharged under section 523, then any attempt to collect that debt will not violate the discharge injunction, and any judgment rendered on that debt will not be void. *Egleston*, *supra*. The exception, however, like all exceptions, must be pursued by the *creditor. See Matter of Fields*, *supra*; *Matter of Benich, supra*. The creditor did not urge section 523(a)(3) prior to its attempted collection action, either in this court or in state court, either before or after it was notified of the entry of a bankruptcy discharge. Instead, the creditor and its agent pursued their remedies, taking their chances. They did so at their peril.

Section 523(a)(3) provides that a creditor's claim will not be subject to the discharge if the claim "was neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, to whom such debt is owed, in time to permit – (A) timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing." 11 U.S.C. § 523(a)(3)(A). It is true that the debtor will have the burden of proving the element "actual knowledge of the case." *See Matter of Faden*, 96 F.3d 792, 795 (5th Cir. 1996). However, it is also true that the issue of "actual knowledge" is rendered essentially irrelevant if the case was a "no asset" case. *See Matter of Smith*, 21 F.3d 660, 663 n. 3 (5th Cir. 1994).[10] In a no asset case, there is

---

[10] Said the court:

> Several bankruptcy courts, concerned with the disruption that may result from reopening no-asset cases to permit the late scheduling of creditors, have offered a different and very persuasive reading of section 523(a)(3). These courts suggest that under section 727(b), a debtor is statutorily entitled to a discharge from all of his pre-petition debts, listed or unlisted, unless a specific exception to discharge applies. Section 523(a)(3), these courts note, only applies where a proof of claim would have been required. In no-asset cases, because the creditors are instructed not to file proofs

no issue of "timely filing a proof of claim" because the deadline to do so never runs. *See* FED.R.BANKR.P. 2002(e), 3002(c)(5). There is no suggestion in this case that the creditor here held a colorable claim under sections 523(a)(2), (a)(4), or (a)(6), so that aspect of section 523(a)(3) never comes into play. It was never necessary for the debtor to "reopen" the case in order to "list" the creditor because the claim would not have been excepted from discharge under section 523(a)(3) anyway. The claim was subject to discharge simply because the claim arose prior to the bankruptcy filing, and the case was a no-asset case in which the trustee filed a report of no distribution. *Smith*, *supra*; *see also Matter of Stone*, 10 F.3d 285, 291 (5th Cir. 1994).[11]

The Ninth Circuit Bankruptcy Appellate Panel in *Lone Star Security & Video, Inc. v. Gurrola (In re Gurrola)*, 328 B.R. 158, 175 (B.A.P 9th Cir. 2005) said that: "the § 524(a) discharge and the discharge injunction are effective against the world to the full extent of their statutory terms, regardless of notice." *See also In re Jones*, 389 B.R. 146, 161 (Bankr. D. Mont. 2008) (citing *Gurrola*, 328 B.R. at 174-175); *see also In re Hensler*, 248 B.R. 488, 491 (Bankr. D.N.J. 2000). *Hensler* points out, after an extensive discussion of the history of section 524 and its predecessor under the Bankruptcy Act, section 14f, that the language of section 524(a)(1)-(2) was specifically added to *change* prior law. "Under § 14f the effect of a discharge was to create an affirmative defense that the debtor could plead in any action brought on the dicharged debt... Thus, section 524

---

of claim, section 523(a)(3) does not apply.

*Smith*, 21 F.3d, at 663 n. 3.

[11] It is largely irrelevant to this discussion whether the equitable factors of *Robinson v. Mann* apply here, because those factors go to whether a court should allow a debtor to re-open a bankruptcy case in order to list a previously omitted creditor. *See Robinson v. Mann*, 339 F.2d 1002 (5th Cir. 1964); *see also Matter of Stone*, *supra*, discussing and applying the factors. The debtor is not here seeking to re-open, nor does the debtor need to. Re-opening the case to "list" the creditor, when the case is a no-asset case, is a useless and unnecessary exercise. *See Matter of Guzman*, 130 B.R. 489 (Bankr. W.D.Tex. 1991); *see also Smith, supra*. Even so, the factors clearly weigh in favor of the debtor here, as there is no suggestion by any party that the omission of this creditor was fraudulent or intentional on the debtor's part, and no prejudice applies to the creditor, as the debt would not be excluded from discharge in any event. *See Stone, supra*.

was added to section 14f as part of the 1978 amendments to the Bankruptcy Act in order to confirm that the discharge operated automatically." *Id.* Unlike its predecessor provision under the Act, the Bankruptcy Code's discharge injunction is both broad and self-effectuating.[12] And, subject to a party's lack of knowledge as to the existence of an injunction, one that violates an injunction does so at its own peril.

The court acknowledges that the procedural law in many states provides that discharge in bankruptcy is an affirmative defense. *See e.g., In re Barrett*, 377 B.R. 667 (Bankr. D.Colo. 2007) (discussing Florida law); *In re Candidus*, 327 B.R. 112 (Bankr. E.D.N.Y. 2005) (discussing New York law); *In re Hensler*, 248 B.R. at 491 (discussing Congress' intent that the addition of the language that currently exists in § 524(a)(1)-(2) to the 1978 amendments to the Bankruptcy Act would preclude a discharged debtor from having to enforce the discharge injunction as an affirmative defense.)  These provisions are often of ancient lineage, long pre-dating the current Bankruptcy Code. It is a mere accident of legal history that these rules continue to exist. Still, the Bankruptcy Code's discharge injunction is a uniquely federal remedy. *See National Gypsum*, *supra*. The fact that a given state may happen to list "discharge in bankruptcy" as an available defense in a state forum does not (and cannot, under the Supremacy Clause) alter its meaning and effect as a federal injunction.

Though it is unnecessary to look to policy as further support for this analysis – it is already adequately supported by both the plain language of the Bankruptcy Code and by the precedents of this circuit – policy nonetheless further supports the conclusion reached here. The cost of a debtor's having to affirmatively enforce the discharge injunction is itself a disincentive to enforcement. Here,

---

[12] The automatic stay and the discharge function in much the same was as do preliminary and permanent injunctions in ordinary litigation. The automatic stay is a self-effectuating statutory preliminary injunction, good (in a general sense) for the tenure in the bankruptcy case. The discharge is a self-effectuating permanent injunction, good against pre-petition creditors

it was not the plaintiff's duty to appear in the California Action to assert his discharge as a defense. To the contrary, it was the defendant's duty to obey the discharge injunction that was issued in the plaintiff's bankruptcy case as of January 26, 2006. Were it otherwise, the discharge would not be the affirmative right that it is, but merely a prelude to further expensive litigation. A debtor would, under that reading, be able to enjoy the benefits of the discharge if the debtor could afford to litigate his or her right to the affirmative defense. Creditors would routinely sue on otherwise discharged debts in the certain knowledge that a fair percentage of debtors would fail to respond, leaving the creditor free to then pursue the debtor as though bankruptcy had never happened. That is not the law. Neither is it good policy.

At the very least, the Defendants were certainly obligated not to proceed with their collection activity once they were on notice that the debtor had received a discharge, on May 6, 2006. Instead, if they believed themselves entitled to the benefits of the exception to discharge in section 523(a)(3), it was incumbent on them to bring an action under that section to obtain the requisite determination. The Defendants interpreted *Musgraves* such that they believed they had a right to proceed with the California Action. Their mistaken belief might be relevant to *scienter*, for purposes of measuring damages. It does not, however, go to liability. *See Distad v. United States (In re Distad)*, 392 B.R. 482, 488 (Bankr. D. Ut. 2008) ("Once it is established that a creditor had knowledge of a debtor's bankruptcy, the creditor's good faith belief that it had a right to the property is irrelevant to the question of the creditor's willfulness"). Thus, in that regard, the complaint has set forth a cause of action upon which relief may be granted and the evidence provided by the plaintiff creates a material issue of fact as to the defendants' violation of 11 U.S.C. § 524(a).

The court disagrees with the defendants' argument that the complaint and the evidence submitted by the plaintiff are insufficient to state an issue of material fact regarding damages. One

document submitted by the plaintiff is a letter (the "Colonel Letter") from the plaintiff's boss - a colonel in the U.S. Air Force - states that, due to the state court judgment, the plaintiff lost his security clearance and as a result, was unable to apply for certain jobs and was passed over for promotion. At this procedural stage of the adversary proceeding, the plaintiff's burden is only to offer sufficient evidence to raise a material issue of fact as to damages. The plaintiff is not required to prove his damages as a matter of law. The motion before the court is one to dismiss under Rule 12(b)(6). The court has permitted the motion to be treated as one for summary judgment, that is true. But defendants' argument with regard to damages amounts to a "no evidence" motion for summary judgment. The parties have not even commenced discovery. It makes no sense at all to bootstrap a motion to dismiss into a "no evidence" motion for summary judgment, especially on the issue of damages. Were this to be a case in which it could be said that the plaintiff could establish no set of facts that would demonstrate legally cognizable damages, that would be a different matter. For example, suppose in a breach of contract action, the only damages the plaintiff could assert were his being upset that his counterparty would let him down like that. Those are not damages for which a party can recover in a breach of contract action.

Here, by contrast, lost employment opportunities *could* make out part of a plaintiff's damages in a discharge violation action. *See In re Distad*, 392 B.R. at 490 (specifically allowing the plaintiff to seek monetary damages "for loss of income from any loss of employment," *Id.*, against the Internal Revenue Code for the IRS's violation of § 524(a)); *Kotsopoulos v. Mater (In re Mater)*, 335 B.R. 264, 268 (Bankr. D.N.H. 2005) (in denying a plaintiff's request for a finding that lost wages are a stand-alone injury under § 523(a)(6) saying that "lost wages are part of the damages, not the injury."); *McAlister v. Slosberg (In re Slosberg)*, 225 B.R. 9 (Bankr. D. Maine 1998) (noting that a jury in state court had awarded the plaintiff damages for lost wages.); *Vazquez v. Sears,*

*Roebuvk & Co. (In re Vazquez)*, 221 B.R. 222, 229 (Bankr. N.D. Ill. 1998) (awarding plaintiff recovery of wages that were incorrectly garnished in violation of § 524(a) and saying that a plaintiff's damage award "must be based on evidence rather than guesswork, wishful thinking, and pie-in-the-sky dreaming"). The plaintiff is hardly under a duty at this early stage to *establish* his damages claim. For the plaintiff to defeat summary judgment, the law only requires that a material issue of fact be raised. The court is satisfied that that has been done here. The same ruling applies to the defendants' contention that the plaintiff has not met his burden to recover attorneys' fees. The plaintiff has raised a material issue of fact that attorneys' fees may be recoverable (although the extent to which attorneys fees are recoverable is, again, not before the Court at this juncture). *Vazquez*, 221 B.R. at 229 (saying that if the plaintiff in that case had been represented by an attorney, his reasonable attorneys' fees would have been recoverable). The court readily agrees that the plaintiff will have to show what fees are alleged to have been incurred as a result of the defendants' alleged discharge violations, but there is sufficient summary judgment evidence to raise a material issue of fact with regard to fees.

What fees were incurred and why will turn in part on a determination of what actions on the part of the defendants constituted violations of the discharge, if any. The defendants argued that they dismissed the state court judgment well before the plaintiff ever needed to incur any legal fees. However, the motion tendered to the court in this proceeding only demonstrates when the motion was *prepared*. It does not show when it was actually *submitted* to the state court. Indeed, the Baker Letter actually *rebuts* the contention by defendants that the motion in question was filed on or about the date of its preparation. The motion was prepared in August 2007. The Baker Letter offers to vacate the judgment, but the Baker Letter was sent in January 2008.

**CONCLUSION**

For the reasons stated, the court denies the Defendants' Motion. A separate order will be

submitted by the Plaintiff, consistent with this ruling.

**# # #**