**SIGNED this 15th day of October, 2009.**

_____
**LEIF M. CLARK**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# United States Bankruptcy Court

**Western District of Texas**
**San Antonio Division**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | BANKRUPTCY CASE NO. |
| | ) | |
| SHANE E. EASTMAN | ) | 05-57404-LMC |
| | ) | |
| | ) | CHAPTER 7 |
| DEBTOR | ) | |
| | ) | |

| | | |
|---|---|---|
| SHANE E. EASTMAN, | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| VS. | ) | ADVERSARY NO. 08-5055 |
| | ) | |
| BAKER RECOVERY SERVICES AND, | ) | |
| LAW OFFICES OF JUANA TREJO | ) | |
| | ) | |
| DEFENDANTS | ) | |

Robert F. Eichelbaum, Davidson & Troilo, P.C., San Antonio, TX for Shane E. Eastman.

R. Glen Ayers, Jr., William R. Davis, Jr., Langley & Banack, Inc., San Antonio, TX for Baker Recovery Services and Law Offices of Juana Trejo.

**RULING GRANTING PLAINTIFF'S REQUEST FOR A DECLARATORY JUDGMENT AND AWARDING CERTAIN DAMAGES**

### A.  Introduction

After being discharged in his chapter 7 bankruptcy, Shane E. Eastman (the "Plaintiff" or "Eastman") filed a complaint against Baker Recovery Services ("Baker")[1] and the Law Offices of Juana Trejo (the "Trejo Law Offices," and, together with Baker, the "Defendants") seeking a declaratory judgment that the Defendants violated the discharge injunction of Bankruptcy Code when they attempted to collect on a discharged debt.  Additionally, the Plaintiff requests that the court enjoin the Defendants from further pursuing the discharged debt.  The Plaintiff also seeks damages for the Defendants' violation not only of the Bankruptcy Code's discharge injunction, but also of the Fair Debt Collection Practices Act (the "FDCPA"),[2] the Texas Finance Code (the "TDCA"), and the Texas Business & Commerce Code (the "DTPA").  Finally, Eastman claimed that the Defendants tortiously engaged in practices that rise to the intentional infliction of emotion distress. For the reasons stated below, the court finds that the Defendants did indeed violate the FDCPA, the TDCA, and the Bankruptcy Code.  However, Eastman does not have standing to sue under the DTPA nor did the Defendants actions rise to the level of tort.  Because Eastman failed to meet his burden in proving actual damages, the court does not award any actual common law damages.  However, Eastman's request for an injunction is granted.  Additionally, Eastman is awarded statutory damages, and attorneys' fees and costs.

### B.  Findings of Fact

Eastman filed a voluntary chapter 7 bankruptcy on October 13, 2007 (the "Petition Date"). The case was a 'no asset' case, as indicated by the trustee at the conclusion of the First Meeting of Creditors, and as noted on the docket. Baker is a pre-petition unsecured creditor.[3] However, the Plaintiff failed to list Baker's debt (the "Baker Debt") on his bankruptcy schedules. Plaintiff was not aware of Baker at all,

---

[1] Jamie Baker is the owner of Baker Recovery Services.
[2] 15 U.S.C. § 1692, *et. seq.*
[3] Baker purchased, pre-petition, a debt incurred by the Plaintiff on a Direct Merchants Credit Card Account.

because Baker is a debt buyer. However, the Plaintiff did not list the underlying debt in his bankruptcy either. He explained that the debt was from a credit card used by his former wife when they were still married, and that he had simply forgotten about it. On January 26, 2006, the Plaintiff received his discharge. The next day, the case was closed.

Meanwhile Baker started collection action on the debt he had purchased. On February 28, 2006, Baker, who was represented by the Trejo Law Offices,[4] initiated a lawsuit (the "California Action") in California state court to recover the Baker Debt. Initially, Baker had sued the wrong person. Eventually he learned that the correct Shane Eastman was living in Texas, not California. Baker maintained the California suit anyway. After finally serving Eastman in Texas, Baker and the Trejo firm were contacted by Eastman's bankruptcy lawyer on May 2, 2006. The bankruptcy lawyer told them that Eastman had filed for bankruptcy, and that he had obtained a discharge in January of that year. Baker decided to continue with the lawsuit anyway, despite this new information (he says he relied on counsel for his decision to proceed, but the lawyer he says he relied on did not corroborate this testimony). Eastman assumed the litigation would be halted after his own lawyer contacted Baker, so Eastman did not take any further action in the California Action. He never filed an answer or made any other appearance.

Without further notice to Eastman, Baker on June 1, 2006 obtained a default judgment (the "Baker Judgment") against Eastman in the amount of $11,678. Baker took no further action to enforce this judgment. In fact he took no action even to advise Eastman that there was a judgment against him.

A little over a year later, in October 2007, the Department of the Air Force revoked Eastman's eligibility for access to classified information or assignment of sensitive duties due to the existence of the Baker Judgment. *Ex. D-4.* Eastman did not become aware of the judgment until December 2007 when he returned to duty from leave. On or around January 4, 2008, Eastman, through his counsel in this adversary proceeding, sent Baker a letter requesting that Baker withdraw the Baker Judgment. On January 8, 2008, Baker, through his counsel, replied with a letter in which Baker demanded payment in

---

[4] At trial, it came to light that Juana Trejo is Jamie Baker's wife.

exchange for withdrawing the Baker Judgment.  It was not until March 7, 2008, over a year and a half

after the Baker Judgment was entered, that the Baker Judgment was finally vacated – upon Baker's

request[5] – by the California court.  Eastman's security clearance was not reinstated until approximately

March 15, 2008. *Ex. D-19.*

On January 28, 2008 (before the Baker Judgment was vacated), Eastman moved to reopen his

bankruptcy case. On February 25, 2008, the case was reopened. It was the reopening of this case that

finally motivated Baker to abandon his efforts to extort some payment out of Eastman in exchange for

releasing the judgment. Eastman proceeded with this adversary proceeding anyway, however, initiating

this adversary proceeding on May 6, 2008, seeking a declaratory judgment that Eastman's discharge

barred Baker's actions in California as a matter of law, with or without notice, and that Baker and his

agent/attorney, the Trejo Law Offices, improperly initiated and continued to prosecute the California

Action to recover the Baker Debt, even though the debt had been discharged in the Eastman's

bankruptcy. The complaint specifically alleges that (I) the defendants violated 11 U.S.C. § 524(a); (II)

the defendants violated the FDCPA; (III) the defendants violated Title 5, Chapter 392 of the TDCA;

(IV) as a result of the TDCA violation, the Defendants also violated Title 2, Chapter 17, Subchapter E,

of the DTPA; and (V) the defendants tortiously engaged in practices that rise to the intentional infliction

of emotional distress.

### *Factual Allegations of Liability*

The allegations with regard to the Defendants' actions that form the basis of liability are set forth

in the findings of fact.  These facts are largely agreed-upon as provided in the parties' Joint Pre-Trial

brief (the "Brief"), which was filed on February 24, 2009 [Docket No. 30].

### *Factual Allegations of Damages*

---

[5] The letter is signed by Jamie Baker as owner of Baker Recovery Services.

Eastman contends that he should be awarded damages because the Defendants' actions cost him his military career. Eastman calculated his damages award assuming a 20-year[6] Air Force career in which he had reached a rank of E9. Eastman's testimony at trial, which the court finds to be convincing, is as follows.

After 11 years of service, Eastman left the Air Force in June 2008 at which time he was ranked as an E5. *Ex. D-22*. Eastman's uncontroverted testimony was that within a couple of months after June 2008, he would have been promoted to E6, whether he had stayed in the Air Force or had re-enlisted after quitting (which was an option available to him). Since enlisting, Eastman's ultimate military goal had always been to reach the rank of E9, Chief Master Sergeant, in the Air Force. At trial, Eastman testified that it was very difficult to reach the rank of E9: he estimated that only 15% of enlisted personnel reach the level of E7 or E8 in 20 years. And, of that 15%, only about 45-50% are then promoted to E9.

Eastman stated that as a result of the Baker Judgment his military career goals were ruined, which is why he resigned in June 2008. More specifically, when Eastman's clearance was revoked as a result of the Baker Judgment, he lost out on a certain job opportunity, and, as a result, he believed that he essentially lost any  chance to reach the rank of E9. Eastman testified that towards the end of 2007 and beginning of 2008, he had an opportunity to apply for a job to work directly under an Air Force general – General Travis – which would have kept in on track in reaching the rank of E9. At some point towards the end of 2007[7], in a chance encounter on a flight, Eastman sat next to General Travis who was trying to staff a position in which a person would act as a liaison between the enlisted Air Force personnel and the Air Force officers. And, apparently impressed with Eastman, General Travis invited Eastman to submit an application for the position, which Eastman intended to do as soon as he able to do so.

---

[6] Although Eastman testified that, had he reached his military goals, he would have been able to stay in the Air Force for 30 years, he calculated his damages assuming a 20-year career.
[7] Although Eastman's security clearance was revoked at the end of 2007, Eastman testified that he was not aware of the revocation until after he had spoken with General Travis about the liaison position.

Eastman said that he believed that, had he gotten the liaison position with General Travis, due to the prestige of such position, he would have been on track to advance quite far in the military, possibly even to the rank of E9.  At the time of his conversation with General Travis, Eastman was unaware of his legal troubles with the Defendants and had no idea that his security clearance had at that point already been revoked.  Upon returning to work soon after his encounter with General Travis, Eastman learned of the revocation and, as a result, did not even apply for the liaison position.  Eastman testified that he had been advised to not apply for the job because, had he applied, General Travis would have been unlikely to check Eastman's security status and, had General Travis extended an offer to Eastman, General Travis would have been embarrassed to later find out that Eastman was not eligible for the position.  By the time Eastman's security clearance was reinstated, the position with General Travis had been filled.

In further support of his military career prospects, Eastman offered the testimony of retired Col. Dr. Keneth F. DesRosier. Dr. ResRosier had been Eastman's direct boss since approximately July 2006 and testified that, based upon his own personal experience, he believed Eastman had what it took to eventually become a Chief Master Sergeant. Dr. DesRosier testified that he had observed Eastman in both a combat and non-combat environment and that Eastman had demonstrated excellent skills as a supervisor, manager, and/or worker.  Dr. DesRosier also noted that, as far as he knew, to reach a high rank such as E9, a soldier's record had to be pretty much impeccable and the soldier had to have gotten jobs demonstrating leadership, etc. as well as mentorship relationship with a high-ranking officer.

## C.  Discussion And Analysis of Liability

First, the Court will discuss the various theories of liability that have been pled by the Plaintiff and whether the Defendant is liable under any of the theories.  Second, if the Court finds that the Defendants are liable on any of the Plaintiff's theories, the Court will discuss whether the Defendants are liable for any damages.

*The Complaint*

6

As referenced above, in his Complaint Eastman asserts a number of different theories of liability against Baker and the Trejo Law Offices.  More specifically, Eastman asserts the following violations, each of will be discussed in turn and in the order in which they are listed here:

I.    11 U.S.C. § 524(a). *Complaint*, at ¶¶ 22-24.[8]  As a result of these violations, Eastman requests injunctive relief and believes that the Defendants are liable to him for actual damages. *Complaint*, ¶¶ 21, 24.

II.   15 U.S.C. §§ 1692e(2)(A), (5), (10). *Complaint*, at ¶ 26-28.  As a result of these violations, Eastman believes that the Defendants are liable to him for actual damages under 15 U.S.C. § 1692k(a)(1), statutory damages under 15 U.S.C. § 1692k(a)(2)(A), and attorneys fees and costs under 15 U.S.C. § 1692k(a)(3). *Complaint*, at ¶ 29.

III.  Tex. Fin. Code Ann. §§ 392.301(a)(8), 392.304(a)(8).[9] *Complaint*, at ¶¶ 30-33.  As a result of these violations, Eastman requests injunctive relief under § 392.403(a)(1) and he believes that the Defendants are liable to him for actual damages and costs and attorneys' fees under § 392.403(a)(2) and (b), respectively. *Complaint*, at ¶ 34.

IV.   Tex. Bus. & Com. Code Ann. § 17.46 as a result of violations of the TDCA pursuant to Tex. Fin. Code. Ann. § 392.404. *Complaint*, at ¶¶ 35-36.  As a result, Eastman believes that the Defendants are liable to him for his economic damages, 'treble' damages as provided in § 17.50(b)(1), and attorneys' fees and reimbursement of costs. *Complaint*, at ¶ 37.

V.    The tort of intentional infliction of emotional distress and severe emotional distress. *Complaint*, at ¶¶ 38-40.

*(I)  The Defendants Violated 11 U.S.C. § 524(a)(2) When They Filed The California Action*

The Court will first dispose of the threshold legal issue submitted by the parties in the joint pre-trial Brief.  The Brief states as follows:

---

[8] Although Eastman also requests relief under § 362 of the Bankruptcy Code, this section is no longer applicable.  Any relief afforded to Eastman under the Bankruptcy Code will be pursuant to § 524, the discharge injunction.
[9] Although the Complaint asserts a cause of action under § 392.304(8), this is a typo; the correct section is § 392.304(a)(8).

The primary legal issue in dispute concerns whether or not the debt owed by Plaintiff EASTMAN, to Defendant, BAKER, was discharged in Plaintiff's Chapter 7 Bankruptcy. Plaintiff contends this Court should affirm its previous decision, **In re Musgraves** 129 B.R. 199 (Bkrtcy. W.D. Tex. 1991). Defendants dispute that contention.

This Court has rendered a verbal opinion in relation to Defendant's Motion to Dismiss pursuant to Rule 12(b)(1) and 12(b)(6), which the Court treated as a Motion for Summary Judgment. Plaintiff contends the disputed legal issue, as pertaining to this case, has been resolved by this Court.

Defendant contends that the Plaintiff had more than an adequate opportunity to assert discharge as a defense in the California Courts and did not.  Defendant denies violation of any consumer protection statute, including, without limitation, the FDCPA.

*Id.*, § F at 3. After the Brief was filed, the Court filed its Memorandum of Decision [Docket No. 34] denying the Defendants' previous motion for summary judgment.[10]  In the Memorandum of Decision, the Court analyzed the legal issue framed above at length and held that the Baker Debt was discharged in Eastman's bankruptcy and Eastman had no duty to appear in the California Action to assert the discharge as an affirmative defense. *Memorandum of Decision*, at 12-18.  The court sees no reason to depart from its earlier ruling. Thus, the Defendants may be found liable for violating the discharge injunction regardless whether Eastman raised his discharge as an affirmative defense in the California Action.

With regard to the more specific allegation that the Defendants violated § 524(a)(2) of the Bankruptcy Code, one very recent opinion stated the law on this cause of action, which is summarily repeated here.

The discharge of a debt in bankruptcy 'operates as an injunction against the commencement or continuation of an action, employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor.' 11 U.S.C. § 524(a). Section 524, however, does not prescribe the debtor a specific remedy if a creditor violates the discharge injunction. Absent an express remedy, a violation of the post-discharge injunction may only be sanctioned through a proceeding for civil contempt. *Beskin v. Maupin (In re Maupin)*, 384 B.R. 421, 431 (Bankr. W.D. Va. 2007); *In re Jones*, 367 B.R. 564, 567 (Bankr. E.D. Va. 2007). '[C]ompensatory damages, in addition to coercive sanctions, may be awarded as a sanction for civil contempt if a party willfully

---

[10] In the Brief the parties refer to a motion to dismiss.  However, the motion to dismiss [Docket No. 5] was converted by the Court to a motion for summary judgment. Docket No. 9 (Notice of Hearing and of Court's Intention to Treat Motion to Dismiss as a Motion for Summary Judgment).

violates a section 524(a)(2) injunction.' *Torres v. Chase Bank USA, N.A. (In re Torres)*, 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007).

…

To state a claim for the willful violation of the discharge injunction, a debtor must show that a creditor's 'actions constitute[] an 'act . . . to collect . . . [the mortgage loan] as a personal liability of the debtor.' *Kreeger v. U.S. Bank, N.A. (In re Kreeger)*, 2001 Bankr. LEXIS 2193, at *10-11 (Bankr. W.D. Va. 2001) (quoting 11 U.S.C. § 524(a)(2)). In addition to '[p]ostdischarge lawsuits,' section 524(a)(2) prohibits 'any act to collect a discharged debt, whether by letter, phone call or other means.' 4 *Collier on Bankruptcy P* 524.02[2][a],[b] (15th ed. rev. 2008); see S.R. Rep. No. 95-989, at 5866 (1978), H.R. Rep. No. 95-595, at 6321 (1977) (stating that Congress intended the discharge injunction to be a 'total prohibition on debt collection efforts.'). To succeed the debtor must 'show by [clear and convincing evidence] that the offending . . . entity had knowledge [actual or constructive] of the discharge and willfully violated it by continuing with the activity complained of.' *Torres v. Chase Bank USA, N.A.* (In re Torres), 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007) (alteration in original).

*Harlan v. Rosenberg & Assocs., LLC (In re Harlan)*, 2009 Bankr. LEXIS 706, *10-11, *25-26 (Bankr. W.D. Va. Mar. 25, 2009).  Thus, for the Defendants to be found liable under § 524, Eastman must show that the Defendants had knowledge of the discharge and that they willfully violated the discharge injunction by continuing to prosecute the California Action.

It is obvious to this Court that the Defendants violated § 524(a) of the Bankruptcy Code.  For the reasons stated in the Memorandum of Decision the Court finds that the Defendants willfully violated § 524(a) as of February 28, 2006, the date the Defendants filed the California Action.  However, at the very least, the Defendants clearly violated § 524(a) as of May 2, 2006, the date on which Eastman's bankruptcy counsel first contacted Baker and informed him that the Baker Debt had been discharged in Eastman's chapter 7 case. *Ex. D-3.*

The Court found Baker's testimony to be very unreliable and unbelievable on a number of fronts. First, Baker testified that had he known that Eastman was an active duty member of the military, he would never have pursued collection of the Baker Debt.  But, in a letter sent by Eastman's counsel in this adversary proceeding to the Trejo Law Offices, dated December 26, 2007, Eastman's counsel (Mr. Robert F. Eichelbaum) clearly stated that Eastman was a member of the Air Force. *Ex. D-8.*  This did

not deter Baker's attempt to recover money from Eastman: in a January 8, 2008 letter sent by Baker to Mr. Eichelbaum, Baker agreed to set aside the Baker Judgment in exchange for $2,500 for Baker's costs in attempting to recover the Baker Debt.[11] (Incidentally, there is no question that Baker actually saw the December 2007 letter because in a January 4, 2008 letter sent by Mr. Eichelbaum to both Defendants, Mr. Eichelbaum noted that, as a result of the December 2007 letter, he received a call from Baker on December 26, 2007 to discuss the Eastman matter. *Ex. D-9.*) Consequently, Baker's testimony that he would not have pursued the Baker Debt had he known Eastman was active duty is not credible.

Additionally, Baker testified that had he known that Eastman lived in Texas at the time he filed the California Action, Baker would not have pursued the matter since he is not licensed to collect debts in Texas. Again, this testimony is not credible. At the trial, it came to light that, originally, this was a case of mistaken identity: the Defendants first sued an individual named Shane Eastman that was neither the plaintiff nor the debtor in this case. After being notified of their mistake, and after some investigation, the Defendants tracked down <u>this</u> Shane Eastman sometime in April 2006, who was already living in Texas. Baker testified that within a matter of days of finding out that Eastman lived in Texas the Defendants served him with the California Action. Additionally, the Defendants went further and proceeded to get a judgment against Eastman in June 2006, obviously after they had knowledge that Eastman lived in Texas. Clearly, Baker's testimony is contradictory on this point and simply not credible. Baker was questioned as to why he proceeded against Eastman when, according to his earlier testimony he would not try to collect from a Texas resident. The court was astonished[12] and outraged to hear that Baker proceeded to judgment so that he could later sell the Baker Debt – a debt that was <u>discharged in bankruptcy</u> – to a different debt collector that could seek to collect from Eastman in Texas.

---

[11] Baker also testified that he reviewed Eastman's bankruptcy schedules, which clearly stated that he was a member of the Air Force. However, Baker qualified this testimony by saying that he only checked to see if Eastman had listed the Baker Debt in his bankruptcy schedules. Consequently, he did not see that Eastman was a member of the military.

[12] The court reiterates that it is extremely disturbed to learn that creditors continue to buy and sell debts that are discharged in bankruptcy. Despite the fact that it is illegal to collect on a discharged debt, it is obviously profitable for debt collector-types to continue to deal in the discharged debt market, perhaps in the hope that debtors who have had a breathing spell and gotten back on their feet will simply pay off a debt when faced with the consequences of having such a debt (which should have been written off but which for many reasons is not, *see e.g. Torres v. Chase Bank USA, N.A. (In re Torres)*, 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007)) on their credit report.

Baker testified that if he dismissed the California Action, he would be precluded from re-filing at a later date due to the statute of limitations and would thus be unable to re-sell the Baker Debt to a different debt collector. Ultimately, the court is convinced that Baker's actions, at all times, were malicious and intentional. But at the very least, as of May 2, 2006, Baker acted with (i) knowledge of Eastman's bankruptcy and (ii) intent to recover the Baker Debt. For these reasons, the court believes that Eastman has met his burden under § 524(a) and, consequently, finds the Defendants liable to Eastman for their violation of the Bankruptcy Code's discharge injunction.

*(II) In Filing and Pursuing The California Action, The Defendants Violated The FDCPA*

As outlined above, Eastman asserts a number of violations of the FDCPA against the Defendants.[13] A threshold issue, however, is Eastman's allegation that the Trejo Law Offices are debt collectors for purposes of § 1692a(6) of the FDCPA. Notably, this allegation is not contested. However, even if it was contested, the Court holds that the Trejo Law Offices are 'debt collectors' that may be held liable under the FDCPA.

> The Supreme Court has held that the FDCPA 'applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation.' *Heintz v. Jenkins*, 514 U.S. 291, 299, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995). Judge Barrett summarized the development of law in this area after *Heintz* as follows:

>> For a court to find that an attorney or law firm 'regularly' collects debts for purposes of the FDCPA, a plaintiff must show that the attorney or law firm collects debts as a matter of course for its clients or for some clients, or collects debts as a substantial, but not principal, part of his or its general law practice. *Schroyer v. Frankel*, 197 F.3d 1170, 1176 (6th Cir. 1999). Factors to be considered in this analysis include: (1) the volume of the attorney's collection activities; (2) the frequent use of a particular debt collection document or letter; (3) whether there exists a steady relationship between the attorney and the collection agency or creditor he or she represented; (4) what portion of the overall caseload debt collection cases constitute; (5) and what percentage of revenues derive from debt collection activities. *Id.* Even where debt collection takes up a minor portion of a law practice, 'debt collector' liability may lie where the defendant has an 'ongoing relationship' with a client whose activities

---

[13] Although the Complaint only mentions the Trejo Law Offices as to the violations of a number of counts – most notably the FDCPA and the TDCA – the Court read the Complaint as asserting that both Defendants violated these statutes.

> substantially involve debt collection. *Corbett v. Rex Wolfgang*, No.
> 1:05cv583, 2006 U.S. Dist. LEXIS 80917, 2006 WL 3231257, *1 (S.D.
> Ohio Nov. 6, 2006).

*Evans v. Midland Funding LLC*, 574 F.Supp.2d 808, 818-819 (S.D. Ohio 2008). Baker admitted to being a debt collector. Baker also admitted that he hires the Trejo Law Offices to assist him in collecting debts. At trial, Baker testified that although Juana Trejo is a family lawyer, Baker pays the Trejo Law Offices for its costs in representing him in his debt collection activities, which amounts to around 10% of the Trejo Law Offices' income. Thus, both Baker and the Trejo Law Offices are debt collectors for purposes of the FDCPA.

Ultimately, the Court holds that the Defendants violated the FDCPA. The following are the three sections under which Eastman is moving in this adversary proceeding:

> § 1692e. False or misleading representations
>
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> …
> (2) The false representation of--
>       (A) the character, amount, or legal status of any debt; or
>       …
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>       ...
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. §§ 1692e(2)(A), (5), (10). In turn, § 1692k sets forth the debt collector's civil liability for violations of the FDCPA:

> § 1692k. Civil liability
>
> (a) Amount of damages. Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this title [15 USCS §§ 1692 et seq.] with respect to any person is liable to such person in an amount equal to the sum of--
>       (1) any actual damage sustained by such person as a result of such failure;
>       (2) (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000;
>       …

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

(b) Factors considered by court. In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors--

(1) in any individual action under subsection (a)(2)(A), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional; or

…

(c) Intent. A debt collector may not be held liable in any action brought under this title [15 USCS §§ 1692 et seq.] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

…

15 U.S.C. § 1692k.

As noted above, the FDCPA is extremely broad; case law has necessarily explained the FDCPA's statutory language.  It is of note that unlike liability under § 524(a)(2) of the Bankruptcy Code,[14] "[t]he FDCPA is a strict liability statute… [t]here is no requirement under § 1692e that false representations be intentional or be actionable." *Pittman v. J.J. Mac Intyre Co.*, 969 F.Supp. 609, 613 (D. Nev. 1997).  And "[a] single violation of the … [FDCPA] is sufficient to establish civil liability." *Gibson v. Grupo de Ariel, LLC*, 2006 U.S. Dist. LEXIS 539, at *3 n.2 (N.D. Tex. Jan. 9, 2006) (citing *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997)). The defendant's culpability is only relevant for computing damages under the FDCPA. *Id.* (citing § 1692k(b)).  Claims under § 1692e are scrutinized using the "least sophisticated consumer standard… the standard is

---

[14] Judge Easterbrook summarizes both types - § 524(a) and FDCPA – of claims:

> A debtor dunned after filing for bankruptcy has another potential remedy: ask the bankruptcy judge to hold the other party in contempt of either the automatic stay or the discharge injunction. This option is available against both creditors and debt collectors, but only if the violation is 'willful.' See § 362(h); cf. § 524(a)(2). Willfulness entails actual knowledge that a bankruptcy is under way or has ended in a discharge. If a willful violation can be shown, both actual and punitive damages are available, while vio-[[lations of the ]]FDCPA generally lead to small penalties and never to punitive damages.

*Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. Ill. 2004).

intended to serve a dual purpose: (1) to ensure the protection of all consumers, even the naïve and the

trusting, against deceptive debt collection practices; and (2) to protect debt collectors against liability for

bizarre or idiosyncratic interpretations of collection notices." *Sparkman v. Zwicker & Assocs., P.C.*, 374

F.Supp.2d 293, 301 (E.D.N.Y. 2005); *Barany-Snyder v. Weiner*, 539 F.3d 327, 332-333 (6th Cir. 2008).

> Debt collectors may not make false claims, period. In lieu of a scienter requirement, the
> FDCPA provides a defense 'if the debt collector shows by a preponderance of evidence
> that the violation was not intentional and resulted from a bona fide error notwithstanding
> the maintenance of procedures reasonably adapted to avoid any such error.' 15 U.S.C. §
> 1692k(c).

*Randolph v. IMBS, Inc.*, 368 F.3d at 730 (Easterbrook, J.) (citations omitted). "A demand for immediate

payment while a debtor is in bankruptcy (or after the debt's discharge) is 'false' in the sense that it

asserts that money is due, although, because of the automatic stay (11 U.S.C. § 362) or the discharge

injunction (11 U.S.C. § 524), it is not." *Id.* at 728.  The defendants have the burden of proving, by a

preponderance of the evidence, the affirmative defense available under § 1692k(c).

Although there appears to be a split[15] as to whether a defendant is liable under § 1692a(5) –

imposing liability for 'threatening' to take action that is prohibited – once the defendant has actually

taken action, the Fifth Circuit allows the imposition of liability in such a case. *Poirier v. Alco

Collections*, 107 F.3d 347, 350-351 (5th Cir. 1997) ("As the Louisiana courts have found Alco 's actions

in filing suit against Poirier constituted the unauthorized practice of law, there is no longer any dispute

that Alco violated § 1692e(5) of the FDCPA when it took 'action that cannot legally be taken' against

Poirier.")  Although *Poirier* did not discuss the 'threat' language at all, s*ee generally, id.*, the Fifth

Circuit found that the defendants were subject to liability under § 1692e(5) when they engaged in the

---

[15] *Harrington v. CACV of Colo., LLC*, 508 F.Supp.2d 128, 136-137 (D.Mass. 2007) notes that courts have

> split on the question of whether the FDCPA's prohibition on 'threats' to take illegal action covers collectors
> who actually follow through and take illegal actions, such as a fraudulent motion for default. The Fifth
> Circuit and district courts in the Sixth and Ninth Circuits have held that § 1692e(5) covers completed illegal
> acts as well as the threats to commit those acts… Some district courts in the Sixth and Seventh Circuits
> have gone the opposite way. The First Circuit has not addressed the scope of § 1692e(5)'s prohibition
> against 'threats.'

(citing *Poirier v. Alco Collections, Inc.*, 107 F.3d 347, 350-51 (5th Cir 1997)) (other citations omitted) (agreeing with the
Fifth Circuit's rule and refusing to dismiss the plaintiff's cause of action on that count.)

unauthorized practice of law by suing the plaintiff to recover on a debt. *See generally, id.* Additionally, in a different case, Judge Martinez similarly found that a defendant had violated § 1692e(5) when the defendant filed a petition to confirm an arbitration award and added an unauthorized collection fee to the petition. *Eads v. Wolpoff & Abramson, LLP*, 538 F.Supp.2d 981, 987 (W.D. Tex. 2008) (El Paso division). Thus, Baker may sue under § 1692e(5) for the defendants' act of filing a lawsuit in California to recover on a debt that was discharged in Eastman's bankruptcy.

Here, on the facts before the Court, there is little doubt that the Defendants violated §§ 1692e(2)(A), (5), (10) of the FDCPA. As set forth in the Memorandum of Decision, the Baker Debt was discharged in Eastman's bankruptcy, regardless of whether he listed the Baker Debt in his schedules. *Memorandum of Decision*, at 12-18. Therefore, the Defendants violated the three sections of the FDCPA when they filed a claim to recover on a debt that was not recoverable due to a discharge in bankruptcy. The Court has no doubt that, under the 'least sophisticated consumer' standard, a lawsuit resulting in a default judgment would be considered by such a consumer to be an attempt to collect. Obviously, the Defendants actions went far beyond situations in which debt collectors send letters or make phone calls to debtors. Here, the Defendants actually filed a complaint and got a default judgment against the debtor. Thus, it is without question that the Defendants were seeking to collect the Baker Debt.

As noted above, the Defendants' intent or knowledge is irrelevant for a finding of liability in the FDCPA, it is only relevant for purposes of measuring damages. And, for the same reasons that the Court believes the Defendants are liable under § 524 of the Bankruptcy Code, the court believes that the Defendants have failed to meet their burden in establishing the FDCPA's affirmative defense, set forth in § 1692k(c). The Defendants, at least as of May 2, 2006, had actual knowledge of Eastman's bankruptcy and discharge. Therefore, at least as of that date, the Defendants were in violation of §§ 1692e(2)(A), (5), and (10) of the FDCPA.

*(III)-(IV) The Defendants Violated the TDCA; But Eastman Does Not Have Standing Under the DTPA*

Eastman also asserts that the Defendants ran afoul of the Texas Finance Code (the "TDCA") as well as the Texas Business & Commerce Code (the "DTPA"). Specifically, Eastman claims violations of §§ 392.301(a)(8), 392.304(a)(8), and resulting damages under §§ 392.403, and 392.404 of the TDCA as well as § 17.50 of the DTPA. The relevant provisions state:

§ 392.301. Threats or Coercion

> (a) In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices: …

> (8) threatening to take an action prohibited by law.

§ 392.304. Fraudulent, Deceptive, or Misleading Representations

> (a) Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices: …

> (8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding;

§ 392.403. Civil Remedies

> (a) A person may sue for:

>> (1) injunctive relief to prevent or restrain a violation of this chapter; and

>> (2) actual damages sustained as a result of a violation of this chapter.

> (b) A person who successfully maintains an action under Subsection (a) is entitled to attorney's fees reasonably related to the amount of work performed and costs.

…

§ 392.404. Remedies Under Other Law

> (a) A violation of this chapter is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and is actionable under that subchapter.

Tex. Fin. Code Ann. §§ 392.301(a)(8), 392.304(a)(8), 392.403(a), (b), and 392.404.

Eastman cannot make out a claim under § 392.301(a)(8) in this case because the defendants actually filed the complaint in California, which is to say that he actually followed up on his threats.

While there are no Texas cases on point, the structure of the Texas statute is modeled on the federal

enactment and so should be similarly construed. *See Prophet v. Joan Myers, Myers & Assocs., P.C.*,

2008 U.S. Dist. LEXIS 44143, at *7 (S.D. Tex. June 4, 2008)("…the conduct made unlawful by that act

is virtually identical to the conduct made unlawful by the FDCPA").

     The Defendants are liable under Texas statutory law for filing an improper lawsuit in California

to collect on the Baker Debt. "[B]oth the case law and statutes demonstrate that a fair debt collection can

be premised on flawed legal proceedings because both federal and state law prohibits fraudulent,

deceptive or misleading representations, including those made in judicial or governmental proceedings."

*Gibson v. Grupo de Ariel, LLC*, 2006 U.S. Dist. LEXIS 539, at *14 (N.D. Tex. Jan. 9, 2006); *Eads v.*

*Wolpoff & Abramson, LLP*, 538 F.Supp.2d 981, 987 n. 7 (W.D. Tex. 2008) (citing *Gibson* and *Goldman*

*v. Cohen*, 445 F.3d 152, 155 (2d Cir. 2006) "(holding that an 'initial communication' within the

meaning of the FDCPA includes the initiation of a lawsuit)").  Thus, as stated in the Memorandum of

Decision, because the California Action was improper due to the fact that it sought to collect on a

discharged – and therefore uncollectible – debt, the Defendants are liable under the TDCA. *Id.* at *6-7.

     As for the Defendants' liability under the DTPA, the Court finds that there is none.  Subsection

(h) of § 17.50, titled 'Relief for Consumers,' says:

> (h) Notwithstanding any other provision of this subchapter, if a claimant is granted the
> right to bring a cause of action under this subchapter by another law, the claimant is not
> limited to recovery of economic damages only, but may recover any actual damages
> incurred by the claimant, without regard to whether the conduct of the defendant was
> committed intentionally. For the purpose of the recovery of damages for a cause of action
> described by this subsection only, a reference in this subchapter to economic damages
> means actual damages. In applying Subsection (b)(1) to an award of damages under this
> subsection, the trier of fact is authorized to award a total of not more than three times
> actual damages, in accordance with that subsection

§ 17.50(h).  At first glance, it seems as though there would not be much of a question as to whether the

Defendants are liable under the DTPA.  But, plaintiffs seeking to recover under the DTPA for violations

of the TDCA are not excused from meeting DTPA's standing requirements.  "Tex. Bus. & Com. Code §

17.50(h) does not exempt claimants from showing that they qualify as a 'consumer' under Tex. Bus. &

Com. Code § 17.45(4). In all cases, a plaintiff must qualify as a 'consumer' in order to have standing to bring an action under the DTPA." *Marketic v. U.S. Bank Nat'l Ass'n*, 436 F.Supp.2d 842, 854-855 (N.D. Tex. 2006); *Eads v. Wolpoff & Abramson, LLP*, 538 F.Supp.2d 981, 989. Judge Martinez goes on:

> A 'consumer' is 'an individual . . . who seeks or acquires by purchase or lease, any goods or services.' TEX. BUS. & COM. CODE § 17.45(4). 'Merely obtaining a loan or an extension of credit does not qualify one as a 'consumer.'' *Marketic*, 436 F. Supp. 2d at 855. 'The DTPA applies to a loan transaction if the borrower's objective is to use the loan to purchase goods or services.' *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 195 (S.D. Tex. 2007).

*Eads*, 538 F.Supp.2d at 989.  Here, Eastman is precluded from being awarded damages under the DTPA since he is not a 'consumer' for purposes of the DTPA.  The sole basis for Eastman's claim is pursuant to the extension of credit via a credit card, the balance of which was purchased by Baker after the credit had been extended (in other words, the credit was not even issue by Baker in the first instance). Eastman did not provide the Court with any evidence that he sought credit from Baker for the purchase of goods or services.  Consequently, Eastman may not sue for any damages awarded in the DTPA.

### (V) The Defendants Are Not Liable For Tortious Infliction Of Emotional Distress And Severe Emotional Distress

In Texas, a plaintiff must overcome a fairly high hurdle to recover for the intentional infliction of emotional or severe emotional distress.  One recent opinion provided the standard:

> To recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Johnson*, 985 S.W.2d at 65. The Texas Supreme Court has held that 'intentional infliction of emotional distress is not available as an independent cause of action unless the actor intends to cause severe emotional distress or severe emotional distress is the primary risk created by the actor's reckless conduct.' *Johnson*, 985 S.W.2d at 63; *see also GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605 (Tex. 1999) ("[A] claim for intentional infliction of emotional distress will not lie if emotional distress is not the intended or primary consequence of the defendant's conduct." (citing *Johnson*, 985 S.W.2d at 65))… As the Texas Supreme Court noted in Johnson, an actor must intend to cause severe emotional distress or severe emotional distress must be the 'primary risk' created by the actor's reckless conduct. 985 S.W.2d at 63. In *Johnson*, the court found that because 'the primary risk of reckless driving is physical injury rather than emotional distress,' the witness of a car accident could not recover for intentional infliction of emotional distress. *Johnson*, 985 S.W.2d at 63; *see also Quaker Petroleum Chems. Co., v. Waldrop*, 75 S.W.3d 549, 555 (Tex. App.--

San Antonio 2002, no pet.) (finding that the plaintiff's claim for intentional infliction emotional distress based on the way the defendant chemical company handled a chemical spill 'fails for lack of intentionality' and that to allow recovery 'would circumvent the limitations placed on the recovery of mental anguish damages on a negligence or gross negligence claim').

*Dekelaita v. BP Amoco Chem. Co.*, 2008 U.S. Dist. LEXIS 58069. At *55-56 (S.D. Tex. July 30, 2008).

At trial, Eastman did not provide the Court with any evidence that the Defendants actions rose to the level of intent required for a finding of liability under this claim. In other words, Eastman did not prove – or even offer proof – that the Defendants' actions were undertaken for the primary purpose of causing Eastman emotional distress. Consequently, the Court holds that the Defendants are not liable under this theory of liability.

### D. Discussion and Analysis of Damages

As mentioned above, Eastman seeks a number of different forms of damages in the Complaint. First, he asks that the Court enjoin the Defendants from seeking to collect on the Baker Debt. Based upon the finding that the Baker Debt has been discharged, and is thus uncollectible, the Defendants are so enjoined pursuant to § 524 of the Bankruptcy Code as well as § 392.403(a)(1) of the TDCA. Second, Eastman seeks (i) actual damages, statutory damages, and attorneys' fees under § 1692k of the FDCPA; (ii) actual damages and costs and attorneys' fees under § 392.403 of the TDCA; (iii) economic damages and treble damages under § 17.50(h) of the DTPA; and (iv) damages for the infliction of emotional distress. The Court will first note that, because the Defendants are not liable to Eastman under the DTPA or for the infliction of emotional distress, the Court will not award damages based upon those theories of liability. The only remaining issues is whether Eastman may be awarded actual damages and/or statutory damages as well as attorneys' fees and costs under the Bankruptcy Code, the TDCA and the FDCPA.

First, statutory damages. As noted above, the FDCPA, which is a strict liability statute, *Pittman v. J.J. Mac Intyre Co.*, 969 F.Supp. at 613, allows a successful plaintiff to recover both actual damages and statutory damages. § 1692k(a)(1), (2)(A). With regard to the statutory damages, a plaintiff need not

establish actual damages to recover under the FDCPA. *Neild v. Wolpoff & Abramson, LLP*, 453 F.Supp.2d 918, 924 (E.D. Va. 2006); *Prophet v. Joan Myers, Myers & Assocs., P.C.*, 2008 U.S. Dist. LEXIS 44143, at *7 (S.D. Tex. 2008) (noting that, to assert a claim under either the FDCPA and the TCPA, "'a plaintiff … need not prove actual reliance on a false representation…[nor] establish actual damages.") (citing *Neild*, 453 F.Supp.2d at 923).  The factors a Court may consider in awarding statutory damages are set forth in the statute and include: "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional…" § 1692k(b)(1).  Here, the Defendants did not cease their efforts to collect on the Baker Debt until March 7, 2008, over a year and a half after the Baker Judgment was entered and more than two years after filing a lawsuit to collect on the Baker Debt and twenty-one (21) months after being notified that Eastman had declared bankruptcy, which had resulted in a discharge. As articulated above, the Defendants knew, at least as of May 2, 2006, that the Baker Debt had been discharged in Eastman's bankruptcy.  There is no doubt that the Defendant's actions were intentional. Consequently, because the Defendants violated the FDCPA, Eastman is awarded $1,000 in statutory damages.

Second, actual damages.  Section 392.403 of the TDCA allows a plaintiff to sue for (i) injunctive relief and (ii) "actual damages sustained as a result of a violation of this chapter." § 392.403(a)(1)-(2). The TDCA does not define 'actual damages.' *See generally TDCA*.  In the absence of a statutory definition, "Texas courts generally look to the common law for guidance…" *Quest Medical v. Apprill*, 90 F.3d 1080, 1085 n.5 (5th Cir. 1996) (citations omitted); *Swinnea v. ERI Consulting Eng'rs, Inc.*, 236 S.W.3d 825, 835 (Tex. App. – Tyler 2007). "The purpose of awarding actual damages has always been to compensate the injured plaintiff…" *Robertson County v. Wymola*, 17 S.W.3d 334, 343-344 (Tex. App. Austin 2000).

At common law, "actual damages are either 'direct' or 'consequential.'" *Matheus v. Sasser*, 164 S.W.3d 453, 459 (App. 2 Dist. 2005) (discussing the DTPA).

> Direct damages are the necessary and usual result of the defendant's wrongful act; they flow naturally and necessarily from the wrong. Direct damages are those that are conclusively presumed to have been foreseen or contemplated by the party as the result of his wrongful act. Consequential damages, on the other hand, are those that result naturally, but not necessarily, from the acts complained of.

*Id.*; *Anderson Dev. Corp. v. Coastal States Crude Gathering Co.*, 543 S.W.2d 402, 405 (Tex. Civ. App. – Houston (14th Dist.) 1976, writ ref'd n.r.e.) (saying that general damages "naturally and necessarily flow from a wrongful act, and are presumed to have been foreseen or contemplated by the party as a consequence of his wrongful act. Special damages arise naturally but not necessarily from the wrongful act, and must be shown to have been foreseen or contemplated.") Additionally, the Fifth Circuit has said that:

> [u]nder Texas law, damages must be established with a reasonable degree of certainty. 'There can be no recovery for damages which are speculative or conjectural.' The damages must be ascertainable in some manner other than by mere speculation or conjecture, and by reference to some fairly definite standard, established experience, or direct inference from known facts. Furthermore, 'while mathematical precision is not required to establish the extent or amount of one's damages, one must bring forward the best evidence of the damage of which the situation admits, and there must be some basis for reasonable inferences.' *Richter, S.A. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 939 F.2d 1176, 1188 (5th Cir. 1991) (citations omitted)

*Quest Medical v. Apprill*, 90 F.3d at 1089; *Swinnea v. ERI Consulting Eng'rs, Inc.*, 236 S.W.3d at 838.[16]

Although there is an element of foreseeability with regard to both direct (or general) damages as well as consequential (or special) damages, foreseeability is presumed only with respect to direct damages since this category represents damages "that are so usual [to] an accompaniment of the kind of breach or wrongdoing alleged in the complaint that the mere allegation of the wrong gives sufficient notice." *Sherrod v. Bailey*, 580 S.W.2d 24, 28 (Tex. Civ. App. – Houston (1st Dist.) 1979, writ ref'd n.r.e.). On the other hand, foreseeability is not, and indeed cannot be, presumed with respect to special damages because these types of damages are "those that proximately result from the defendant's wrongful conduct

---

[16] Although under the DTPA foreseeability is not required to prove consequential damages, *Matheus v. Sasser*, 164 S.W.3d at 460 ("Although the foreseeability requirement for consequential damages does not apply under the DTPA, such additional damages must be proved with reasonable certainty and are not recoverable if they are too remote, too uncertain, or purely conjectural. Consequential damages must be specially pled."), Eastman's only claim for recovery of actual damages in this case is under the TDCA and/or the FDCPA. Therefore, the normal – common law – foreseeability rules apply as set forth by the Fifth Circuit in *Apprill*.

but are of such an unusual nature that they would normally vary with the circumstances of the individual case in which they occur." *Sherrod v. Bailey*, 580 S.W.2d at 28; *see Anderson Dev. Corp.*, 543 S.W.2d at 405. Instead, to recover special damages, a plaintiff must show that the damages were reasonably foreseen by both parties. *Anderson Dev. Corp.*, 543 S.W.2d at 405. And, due to their special nature, "[c]onsequential damages must be specially pled." *Matheus v. Sasser*, 164 S.W.3d at 460; *Burke v. Union Pac. Res. Co.*, 128 S.W.3d 46, 66 (Tex. App. Texarkana 2004) ("Under the common law, 'special damages' are not recoverable unless the defendant had notice that the plaintiff would suffer such damages. 'When items of special damage are claimed, they shall be specifically stated.' In order to be recoverable, special damages must be pled." (citations omitted))

Here, Eastman has not stated what kind of actual damages he seeks to be awarded; he simply requests "actual damages." *Complaint*, ¶ B at 7. But, in the Complaint, Eastman asserts that the Defendants' actions

> directly caused a suspension of Plaintiff's security clearance and access to classified information in his employment capacity with the Department of the Air Force. Plaintiff further asserts that said suspension caused him to be bypassed for promotion and prevented him from obtaining several jobs and more lucrative assignments that would have advanced his military career.

*Complaint*, ¶ 39 at 6. The Court believes that Eastman's demand that he be compensated for his ruined military career as a result of his security clearance being revoked because of the Baker Judgment to be a request for special damages. In other words, because not every bankruptcy debtor is in the military where advancement is subject to some type of security clearance, the compensation Eastman seeks for the loss of entire military career is of such an "unusual nature that they would normally vary with the circumstances of the individual case in which they occur." *Sherrod v. Bailey*, 580 S.W.2d at 28. Consequently, Eastman must show that the special damages are not "too remote, uncertain, conjectural, speculative or contingent." *Meyers v. Moody*, 693 F.2d 1196, 1214 (5th Cir. 1982) *cert. denied* 464 U.S. 920, 104 S. Ct. 287, 78 L. Ed. 264 (discussing special damages in securities fraud case).

Ultimately, for a number of reasons, the Court does not believe that Eastman established with a sufficient degree of certainty that he is entitled to receive what essentially amounts to the loss of his wages over the course of a 20-year career in the Air Force assuming an ultimate rank of Chief Master Sergeant (E9).  The damages are simply too remote and speculative.  First, Eastman himself credibly testified that it was exceedingly difficult to reach the rank of E9 and that an extremely low percentage of people in the Air Force do so, especially within a 20-year time period.  Second, Eastman did not even establish that he would have definitely gotten the job with General Travis, had he applied, which he did not.  In other words, Eastman failed to establish with a reasonable degree of certainty that, <u>had</u> he been eligible and <u>had</u> he applied for the position, he would have most likely gotten the job.  Eastman did not prove – or even allege – that he was in some special position vis-à-vis other applicants with regards to being hired by General Travis.  In other words, General Travis may have invited a number of similarly qualified candidates to apply for the prestigious position; or, as is more likely due to the nature of any job opportunity that becomes available, a number of strong candidates applied for the position through normal channels.  It strikes this Court as simply too speculative to award Eastman damages for the loss of a career that was so uncertain that it depended on chance meetings with generals to proceed on track. In other words, had Eastman been on track <u>regardless</u> of this chance encounter, Eastman may have had an easier time in proving, with a reasonable degree of certainty, that he would have reached E9 except for the actions of the Defendants.[17]  Additionally, Eastman quit the Air Force in June 2008, who is to say that, had he stayed in – or re-enlisted – he would not have had another chance meeting with a different

---

[17] Along these lines however, the Court notes that it does not have before it any of the qualifications of any other Air Force member that has reached E9 within 20 years.  And, although the Court finds Eastman's and Dr. DesRosier's testimony to be credible that Eastman had been <u>currently</u> on the right track at the end of 2007, the Court has no knowledge of what is required of a person to <u>remain</u> on such an ambitious track and whether Eastman could have met those qualifications.  For that matter, the Court does not know whether Eastman had all of the qualifications necessary for the General Travis job. Although Eastman's resume was furnished, there is no evidence before the Court as to what General Travis' requirements were and whether Eastman otherwise (except for the security clearance issue) met them.  For instance, in the field of law, many top firms will not hire associates that have a GPA below a certain level, say at a minimum, a 3.5.  Therefore, it would be a reach for a law student with a GPA below 3.0 to sue an entity for ruining the law student's chance to <u>apply</u> to a law firm with a minimum GPA requirement of 3.5.  The law student would have a hard time showing that, had he applied, he would have gotten hired. Similarly, the Court has no idea whether Eastman would continue to be eligible for a rank of E9 due to other factors other than his inability to apply for the job with General Travis.

general that would have offered him an even better and more prestigious position that would have put Eastman back on the E9 track? Ultimately, for these reasons, the Court denies any special or circumstantial damages as being too speculative.

To the extent Eastman asserted mental distress damages as a form of actual damages Eastman failed to provide any evidence at the trial as to his mental state as a result of the Defendants' actions. Thus, actual damages in that respect are also denied.

The FDCPA also provides for actual damages. § 1692k(1). And, a plaintiff claiming civil contempt for violation of the Bankruptcy Code's discharge injunction may be awarded consequential or special damages. *Harlan v. Rosenberg & Assocs., LLC (In re Harlan)*, 2009 Bankr. LEXIS 706, *10-11, *25-26 (citing *Torres v. Chase Bank USA, N.A. (In re Torres)*, 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007)). However, the only actual damages that were alleged by Eastman were the ones related to the loss of income for his failed military career and, possibly, his mental distress. For the same reasons as articulated above with relation to the TDCA, the Court denies any actual damages under either the FDCPA or for violation of the Bankruptcy Code.

Third, attorneys' fees and costs. The Court finds that Eastman is entitled to attorneys' fees and costs, which are to be determined at a later hearing. First, because Eastman was awarded statutory fees under the FDCPA, he is entitled to recover attorneys' fees and costs. § 1692k(3). Alternatively, by the plain language of the TDCA, Eastman is also entitled to recover attorneys' fees since he succeeded in enjoining the Defendants from further seeking to collect the Baker Debt under § 392.403(a)(1). § 392.403(b) (saying that a person who is successful in maintaining an action under subsection (a), which includes an action for an injunction as well as for actual damages, "is entitled to attorney's fees reasonably related to the amount of work performed and costs.")[18] Consequently, a further hearing will be necessary for the determination of the amount of attorney's fees and costs to be paid to Eastman.

---

[18] In its research, the Court discovered two cases that refused to award attorneys' fees when no actual damages were awarded to the plaintiff under the TDCA. *Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 30-31 (Tex. App. – Tyler 2000, pet. denied); *Johnson Savage, Inc. v. Fehrenkamp*, 2009 Tex. App. LEXIS 2267, at *13-14 (Tex. App. Austin, Apr. 2, 2009).

### E. Conclusion

In sum, based upon the evidence provided at the trial, the Court finds that the Defendants violated § 524(a) of the Bankruptcy Code, §§ 1692e(2), (5), and (10) of the FDCPA, and § 392.301(a)(8) and § 392.304(a)(8) of the TDCA. The Defendants are forever enjoined pursuant to § 524 of the Bankruptcy Code and § 392.403(a)(1) of the TDCA from seeking to collect on the Baker Debt. Eastman may recover attorney's fees and costs under § 392.403(b) of the TDCA. Additionally, Eastman is awarded $1,000 in statutory damages under § 1692k(a)(2)(A) of the FDCPA and may thus recover attorney's fees and costs under § 1692k(a)(3) of the FDCPA. However, due to Eastman's failure to prove actual damages, no actual damages of any kind are awarded. Additionally, Eastman does not have standing to sue under the DTPA and, therefore, no damages are awarded under § 17.50(h) of the DTPA. Lastly, Eastman failed to meet his burden to prove intentional infliction of emotional distress or severe emotional distress under Texas law and he is thus not awarded any damages based on those theories of liability.

A form of judgment consistent with this decision will be separately entered.

# # #

---

The *Chappell* court did not cite any case law to support its holding and the *Fehrenkamp* only cited to the *Chappell* court. The Court respectfully disagrees with both *Chappell* and *Fehrenkamp*. Section 392.403 provides: "A person who successfully maintains an action under subsection (a) is entitled to attorney's fees reasonably related to the amount of work performed and costs." § 392.403(b). In turn, subsection (a) states: "A person may sue for: (1) injunctive relief to prevent or restrain a violation of this chapter; and (b) actual damages sustained as a result of a violation of this chapter." Thus, clearly, a successful suit under subsection (a) includes either injunctive relief as well as actual damages. Here, the Court specifically held that the Defendants were enjoined from pursuing the Baker Debt under § 392.403(a)(1). Thus, § 392.403(b) applies to allow the recovery of attorneys' fees and costs.