**SIGNED this 28th day of December, 2010.**

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE
_____

# UNITED STATES BANKRUPTCY COURT
### Western District of Texas
### San Antonio Division

| | |
|---|---|
| IN RE<br><br>SHANE E. EASTMAN<br><br>DEBTOR | BANKR. CASE NO.<br><br>05-57404-C<br><br>CHAPTER 7 |
| SHANE E. EASTMAN<br><br>PLAINTIFF<br><br>V.<br><br>BAKER RECOVERY SERVICES AND THE LAW OFFICES OF JUANA TREJO<br><br>DEFENDANTS | <br><br><br><br>ADV. NO. 08-5055-C |

### DECISION ON ATTORNEYS FEES

The court rendered judgment in this case in favor of the Plaintiff for a violation of the discharge injunction. The judgment ruled that the Plaintiff's damages consisted of the attorneys' fees incurred in bringing this action to enforce the discharge injunction. The Plaintiff has submitted a request for fees that includes both fees for services relating to attempts to enforce the discharge before litigation was initiated, and for

services relating to the prosecution of this adversary proceeding. Defendants claim that, if attorneys fees are the only damages, then no attorneys fees can be awarded because to do so would be in derogation of the American Rule (which states, in essence, that parties are expected to pay their own attorneys fees in litigation). Even if fees can be awarded, Defendants claim that the award should be limited to the amount of fees incurred up to the point when Defendant Baker Recovery Services withdrew the offending judgment. If so, and the amount of fees incurred to that point are less than the amount offered by the Defendants in their offer in compromise prior to trial, then Plaintiff is required to pay the Defendants' attorneys fees, pursuant to Rule 68 of the Federal Rules of Civil Procedure, which was filed a few months before trial, but after the Defendants had submitted a motion to dismiss under Rule 12(b)(6) and a motion for summary judgment (both of which required rulings by the court). Defendants finally contend that the request for attorneys fees is really a covert request for punitive damages, because the amount of fees requested is over $30,000.

**Analysis**

The Plaintiff furnished time records detailing the services performed by the two attorneys retained, Robert Eichelbaum and Alex Katzman. Eichelbaum is a consumer bankruptcy lawyer with more than 10 years of experience. Katzman is a litigation specialist with over 15 years of experience. Each charged $300 an hour for their services. Counsel for the Defendants claims that rate is excessive, given that his own rate is only $400 an hour, and he has both a national reputation and national experience. The court finds that $300 is a reasonable rate for the nature of the services rendered by attorneys of this level of skill and experience, based on the court's

2

familiarity with fees charged by attorneys of similar skill and experience for services of this sort. Counsel for the Defendant is, frankly, charging less per hour than he could for the experience, skill, and national reputation that he enjoys. Thus, his hourly rate says little about whether the rate charged by the Plaintiff's lawyers is reasonable.

The services rendered were also reasonable. The fee detail reflects that counsel were efficient in the use of their time, and spent the amount of time that was needed to prepare for a trial in a matter that was hotly contested by the Defendants, against a firm whose lawyers are some of the best in the city. In addition, Eichelbaum was faced early on with a difficult opponent -- a creditor who insisted that it was free to pursue its course of conduct, and who even attempted to use its judgment to extract a payment *after* the Defendant knew that the Plaintiff had gone through bankruptcy and had a discharge in hand. His efforts in the face of that opposition were reasonable and necessary. Finally, it was reasonable for the Plaintiff to initiate this litigation even though the Defendants finally ceased their overt violations of the discharge injunction because the Defendants refused to reimburse the damages that Plaintiff legitimately believed he had suffered.[1] As is discussed later in this decision, a private party for whose benefit an injunction is entered is entitled not only to such orders as may be necessary to prevent further violations of the injunction, but also to the recovery of such damages as resulted from the defendant's violation of the injunction. It was thus legitimate for the Plaintiff to bring this lawsuit, in order to recover those damages.

---

[1] It is a mistake to apply *ex post* analysis to the necessary *ex ante* judgment of counsel to bring this action on behalf of the Plaintiff. Counsel does not have a crystal ball, after all. They cannot predict with any certainty how their evidence will ultimately play out at trial. Prior to trial, the information they had in hand was sufficient to justify bringing this action to recover damages they legitimately believed were recoverable.

familiarity with fees charged by attorneys of similar skill and experience for services of this sort. Counsel for the Defendant is, frankly, charging less per hour than he could for the experience, skill, and national reputation that he enjoys. Thus, his hourly rate says little about whether the rate charged by the Plaintiff's lawyers is reasonable.

The services rendered were also reasonable. The fee detail reflects that counsel were efficient in the use of their time, and spent the amount of time that was needed to prepare for a trial in a matter that was hotly contested by the Defendants, against a firm whose lawyers are some of the best in the city. In addition, Eichelbaum was faced early on with a difficult opponent -- a creditor who insisted that it was free to pursue its course of conduct, and who even attempted to use its judgment to extract a payment *after* the Defendant knew that the Plaintiff had gone through bankruptcy and had a discharge in hand. His efforts in the face of that opposition were reasonable and necessary. Finally, it was reasonable for the Plaintiff to initiate this litigation even though the Defendants finally ceased their overt violations of the discharge injunction because the Defendants refused to reimburse the damages that Plaintiff legitimately believed he had suffered.[1] As is discussed later in this decision, a private party for whose benefit an injunction is entered is entitled not only to such orders as may be necessary to prevent further violations of the injunction, but also to the recovery of such damages as resulted from the defendant's violation of the injunction. It was thus legitimate for the Plaintiff to bring this lawsuit, in order to recover those damages.

---

[1] It is a mistake to apply *ex post* analysis to the necessary *ex ante* judgment of counsel to bring this action on behalf of the Plaintiff. Counsel does not have a crystal ball, after all. They cannot predict with any certainty how their evidence will ultimately play out at trial. Prior to trial, the information they had in hand was sufficient to justify bringing this action to recover damages they legitimately believed were recoverable.

The issues remaining, then, are those framed by the Defendants: (1) may a plaintiff who prevails in a discharge enforcement action recovery attorneys' fees where the attorneys' fees are the only damages suffered; (2) if so, are the compensable fees limited to those fees incurred up to the point that the offending conduct ceased; and (3) if the fees incurred are less than the offer in compromise, must the Plaintiff then pay the Defendants' attorneys' fees.

*1. May a plaintiff in a discharge enforcement action recover attorneys' fees if the only damages suffered as a result of the discharge violation are attorneys' fees?*

Attorneys' fees may be recovered by prevailing plaintiffs in actions to enforce the discharge injunction. *See In re Mayer*, 254 B.R. 396, 398 (Bankr. N.D.Ohio 2000); *see also In re Summers*, 213 B.R. 825, 829 (Bankr. N.D. Ohio 1996). A district court ruled that enforcement of the discharge injunction is in the nature of an award for civil contempt, and that such awards typically consist of both compensation for any actual damages sustained, plus the reasonable expenses incurred in presenting the contempt to the court. *See In re Braun*, 152 B.R. 466, 474 (N.D.Ohio 1993) (citing authorities from the Fifth and Sixth Circuits). The Fifth Circuit has observed that

> As courts have frequently stated, the purposes of a civil contempt proceeding are two-fold: to compensate the prevailing party for losses or damages caused by the other's noncompliance and to coerce the derelict party into compliance with the original injunction. *McComb v. Jacksonville Paper Co.*, 1949, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599, 604; *United States v. United Mine Workers*, 330 U.S. at 304-05, 67 S.Ct. at 701-702, 91 L.Ed. at 918-19; *Southern Railway Co. v. Lanham*, 5 Cir., 1968, 403 F.2d 119, 124 ("Civil contempt is 'wholly remedial' serves only the purpose of a party litigant, and is intended to coerce compliance with an order of the court or to compensate for losses or damages caused by noncompliance.").

*Northside Realty Assoc., Inc. v. United States*, 605 F.2d 1348, 1356 (5th Cir. 1979).

The question remains whether attorneys' fees may be awarded when the only actual damages suffered were attorneys fees incurred to enforce the injunction. In *In re Cherry*, 247 B.R. 176 (Bankr. E.D.Va. 2000), the court ordered recovery of attorneys' fees for a discharge violation. There were no other damages assessed. The court ruled that the attorneys' fees incurred to remedy the discharge violation were themselves the damages suffered as a result of the violation. Said the court:

> Cherry's undisputed testimony is that he has incurred $6,000.00 in attorney's fees in the defense of the State Court proceeding and in the course of the instant proceeding for contempt. Cherry proffered no other evidence of compensable harm. An award of the attorney's fees Cherry incurred, both in the defense of the Motion for Judgment and in the prosecution of the instant contempt proceeding, is merely to compensate Cherry for the actual damages Arendall's contempt of the discharge order incurred.

*See id.*, at 189 & n. 22.

The *Cherry* ruling is appropriate. It is not uncommon that the *primary* (if not the only) damage incurred by a debtor for the violation of the discharge injunction are the attorneys' fees necessarily incurred in order to enforce that very injunction. The whole point of the discharge is to spare the debtor from having to fend off the sort of collection actions that were taken in this case. The damage suffered by the debtor here was that he was only able to enjoy the benefit of the discharge by hiring a lawyer to make the Defendants here stop their collection actions. Only by taking that step was the Plaintiff here able to stop the Defendants from continuing their contumacious conduct, their violation of the injunction that the discharge represents. It defies logic to suggest that a Plaintiff be required to incur a cost in order to enjoy the benefits of an injunction designed for his benefit, then be denied the right to be reimbursed for those costs simply because that cost happens to be attorneys' fees. The *Cherry* court correctly

5

recognized attorneys' fees necessarily incurred in order to enforce the injunction as a species of actual damages resulting from the defendant's violation of the injunction. The attorneys' fees incurred by the Plaintiff in this case in order to get the Defendants to cease violating the discharge injunction are actual damages suffered by the Plaintiff, and so are properly compensable under the numerous authorities that authorize the recovery of damages suffered as a result of the violation of an injunction. *See Northside Realty, supra* (and cases cited therein).

*2. May a plaintiff in discharge litigation recover attorneys' fees for prosecuting an action under section 524 when the actual wrongful conduct has ceased*.

The authorities also authorize the recovery of reasonable expenses incurred in order to enforce an injunction by civil contempt.

> "Ordinarily, of course, the civil contempt fine 'must not exceed the actual loss to the complainant caused by respondent's violation of the decree in the main cause *plus complainant's reasonable expenses in the proceedings necessitated in presenting the contempt for the judgment of the court*.' " Clark v. Boynton, 362 F.2d at 998, Quoting Parker v. United States, 1 Cir., 1946, 153 F.2d 66, 71.

*Northside Realty Assoc., Inc. v. United States*, 605 F.2d 1348, 1356 (5th Cir. 1979) (emphasis added). The Plaintiff brought this lawsuit after the Defendants had withdrawn the offending judgment. The evidence does not show that the Defendants offered to pay the Plaintiff's attorneys' fees incurred up to that point in time. Thus, if the Plaintiff was to recover his damages incurred (namely, the attorneys' fees incurred in getting the Defendants to comply with the discharge injunction), it was necessary to bring a lawsuit to recover those damages. What is more, the Plaintiff reasonably believed himself entitled to other damages as well, meaning the lawsuit was justifiably brought. The expense of bringing the litigation was thus reasonable and necessarily incurred.

6

Additional attorneys' fees incurred once the contemptuous conduct has ceased can only occur as a result of preparing and bringing an action under section 524, in order to recover damages resulting from the contemptuous conduct. As already noted, an action for civil contempt is properly brought both to enforce the injunction and to recover damages for any actual harm suffered as a result of the contumacious conduct. *See Northside Realty, supra.* So long as the action is legitimately brought, it is proper that the Plaintiff recover reasonable costs incurred to bring the action, even if the actual damages awarded are less, or are premised on different facts than those originally asserted. After all, the Plaintiff cannot predict whether all his damage claims will in fact be sustained. As explained in a decision by the Eleventh Circuit:

> We believe that the district court's judgment of contempt and the accompanying sanction served a valid compensatory purpose. Western's argument that Sizzler's expenses were not incurred "because of" the violations, while ingenious, cuts so broadly that accepting it would require us to ignore both binding precedent and common sense. Under Western's theory, no expenses incurred by the moving party in an effort to enforce compliance by the party's opponent could ever be reimbursed in a contempt action. Attorney fees, for instance, could not be awarded to a prevailing movant. It would not be precisely accurate to say that the fees were incurred "because of" the contemnor's contemptuous conduct, since the attorney would have put in the time even if the court had found no contempt. Under our precedents, however, an award of attorney fees to the injured party in a civil contempt case is within the district court's discretion. *See, e.g.*, *Northside Realty Associates v. United States*, 605 F. 2d 1348, 1356 n. 23 (5th Cir.1979). Indeed, reimbursement to a prevailing movant may include "expenses reasonably and necessarily incurred in the attempt to enforce compliance." *Rickard*, 735 F.2d at 458 (quoting *Banner*, 529 F.2d at 827). This rule is sensible as well as binding. It provides parties with an added incentive to monitor and enforce an opponent's compliance with a court order by allowing them to recover their expenses in exposing noncompliance. Yet by conditioning reimbursement on enforcement success, it discourages parties from wasting resources on scavenging for nonexistent violations.

*Sizzler Family Steakhouses v. Western Sizzlin Steak Houses, Inc.*, 793 F.2d 1529, 1534-35 (11th Cir. 1986). The fees incurred by the Plaintiff in prosecuting this action are thus also compensable.

3. *What is the effect of the offer to compromise on the award of fees to the Plaintiff and a possible award to Defendants?*

> Rule 68 of the Federal Rules of Civil Procedure provides as follows:
>
> (a) Making an Offer; Judgment on an Accepted Offer. At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.
>
> (b) Unaccepted Offer. An unaccepted offer is considered withdrawn, but it does not preclude a later offer. Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs.
>
> (c) Offer After Liability is Determined. When one party's liability to another has been determined but the extent of liability remains to be determined by further proceedings, the party held liable may make an offer of judgment. It must be served within a reasonable time--but at least 14 days--before the date set for a hearing to determine the extent of liability.
>
> (d) Paying Costs After an Unaccepted Offer. If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.

FED.R.CIV.P. 68. The rule thus provides that the plaintiff must pay a defendant's fees if the judgment rendered fails to exceed the amount of the offer in compromise. In this case, the judgment consists of (a) the actual damages suffered, consisting of attorneys' fees incurred by the Plaintiff in order to enforce the discharge injunction and (b) the reasonable expenses incurred by the Plaintiff in recovering those actual damages, consisting of attorneys' fees incurred in prosecuting the litigation in order to obtain that recovery. *Northside Realty Assoc., Inc. v. United States*, 605 F.2d 1348, 1356 (5th Cir.

1979). Thus, "costs" in the context of the rule includes the reasonable attorneys' fees incurred by the plaintiff in enforcing a civil contempt action, per settled case law. "[T]he judgment finally obtained must include not only the verdict of the jury but also the costs actually awarded by the court for the period that preceded the offer." *Marryshow v. Flynn,* 986 F.2d 689, 692 (4th Cir.1993)*.*

The offer in this case was made well after the Plaintiff had incurred reasonable fees for the preparation of the complaint, preparing a response to a motion to dismiss, and preparing a response to a motion for summary judgment. In addition, discovery had already taken place. The offer made was for $5,000, and was filed of record on February 27, 2009. By that point, the Plaintiff had already incurred $3,900 in fees by Alex Katzman (litigation counsel), and $4,150 in fees by Rob Eichelbaum (bankruptcy counsel) by February 27, 2009. Over $9,000 in fees were incurred by Mr. Eichelbaum from late 2007 through the end of 2008. $3,000 in fees was incurred just to convince the Defendants to withdraw the offending judgment -- and that only after the Defendants tried to use that judgment to extract a payment from the Plaintiff. Thus, the judgment, including the costs incurred to that point in time exceeded the offer in compromise. The Defendants are not entitled to recover their costs from Plaintiff under Rule 68(d).

## Conclusion

For the reasons stated, the court concludes that the fees requested by the Plaintiff are reasonable, that attorneys' fees are themselves a legitimate kind of actual damages resulting from a violation of the discharge injunction, and that, in an action to recover those fees, the additional fees incurred are also compensable as reasonable expenses associated with recovering those actual damages, and that the amount of the

9

judgment awarded, including the costs incurred up to the date of the offer in compromise, exceeded the amount of the offer in compromise. Thus, the Defendants are not entitled to be compensated by the Plaintiff for their costs.

Counsel for Plaintiff is directed to submit a form of order and judgment consistent with this decision.

### # # #